## Payne-Baber Coal Co. of Kentucky v. Butler.

Oct. 18, 1938.

HILL & HOBSON for appellant.

J. D. BOND, JEAN L. AUXIER and WM. J. BAIRD for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

G. E. Butler, doing business under the firm name and style of Big Sandy Electrical and Repair Company, has recovered judgment against the Payne-Baber Coal Company of West Virginia and the Payne-Baber Coal Company of Kentucky, corporations, for the sum of $904.61 representing the balance due on an account and the Payne-Baber Coal Company of Kentucky is appealing.

The account is for services performed and materials furnished the Payne-Baber Coal Company of West Virginia until the organization of appellant corporation and then for labor and materials furnished the latter. No question is made concerning the correctness of items making up the account but appellant is denying liability on all items of the account prior to its organization and admitting liability on all items thereafter. It offered to confess judgment for same.

It is alleged in substance in the petition as amended that the Payne-Baber Coal Company of West Virginia

without notice to appellee transferred its business property and assets to appellant without any consideration except the promise of the latter corporation to pay its debts; that appellant is composed of the same officers and stockholders as the West Virginia corporation and merely a continuation of the same corporation, carrying on the same business with the same property and through the same officers; that on or about May 1, 1933, the West Virginia company transferred to appellant all its property and assets without consideration therefor; that the transfer was made with the design and intent to cheat, hinder and delay the creditors of the former and was fraudulent as to appellee; that in December 1933 when there were accounts and property of the West Virginia company from which appellee might have made his debt and when he might have discovered the transfer of the assets of the one corporation to the other in time to pursue his legal remedy, appellant wrote and mailed a letter set up in the petition wherein it is claimed that appellant promised to pay the account and that appellee believing and relying thereon withheld action on his account until the assets of the West Virginia corporation were dissipated and sequestered; that both before and after appellee received the letter, appellant through its officers repeatedly and on many occasions promised to pay the account in full and by reason of such act and conduct appellant is estopped to deny that it owes the account in full; that in consideration of appellee's forbearance to enforce his claim appellant promised in the writing referred to in the answer to pay the debt sued on.

By answer as amended appellant made a general denial of the allegations of the petition as amended except that it admitted its liability to the extent of $142 balance on items of account made after its organization. It further affirmatively alleged that on December 23, 1933, the Payne-Baber Company of West Virginia did not own any property in this state or elsewhere but that appellant purchased all of the assets of that corporation on May 1, 1933, and paid therefor in good faith the sum of $2500 more than four months before December 23, 1933.

As grounds for reversal it is argued: (1) That appellant purchased all assets of the West Virginia Corporation and paid therefor in cash an amount in excess

of the fair market value thereof and therefore is not liable for the debt of the other corporation, or (2) that if liable to any extent the liability would be limited to the sum of $90; (3) that appellee established no promise on the part of appellant to pay the portion of the account in controversy; (4) that the chancellor erred in overruling appellant's exceptions to the deposition for appellee.

It appears from the record that for some time prior to May, 1933, the Payne-Baber Company of West Virginia was engaged in the coal business as brokers for or at least sold the output of several mining companies. G. H. Baber and E. J. Payne owned the stock of the corporation. They were also stockholders and officers of most if not all, of the companies for which the corporation sold coal. The corporation maintained offices in a bank building at Ashland and also had a store or commissary. Its capital stock was $50,000 and its liabilities about $25,000. In May 1933 appellant corporation was chartered with E. J. Payne and G. H. Baber and the mother of the latter as its stockholders. It was capitalized at $1,000 and took over all the assets and business of the old corporation, occupied the same offices with the same equipment and officers and personnel and continued to sell coal for the same companies. On December 23, 1933, a letter signed by G. H. Baber, vice-president, on stationery of appellant was written to appellee in which it was said in part:

"When I last wrote you we were running pretty well and I thought we would be able to get your account cleaned up without much delay; but suddenly everything quit and we have been going just one to three days a week and on such a run we can just barely make our payrolls. I am not ungrateful for the kindness you have shown us and have tried to reciprocate * * *. You will find that we have paid you $400.00 to $600.00 for the past 60 days on current work; if this money had been applied to the old account and the current work left unpaid the account would not be considered so old and you would not be so concerned over it. I realize we must get something started on the old account and I will work out something with you right after January 1st. * * *"

Appellee testified that both Baber and Payne, as

officers of appellant, also orally promised to pay the account.

A discussion of the law relating to the rights and liabilities as between a purchasing corporation and the creditors of a selling corporation in cases of this character is found in American Railway Express Company v. Commonwealth, 190 Ky. 636, 228 S. W. 433, 30 A. L. R. 543. It is said in effect in that case that where the sale is in good faith and based on a valuable consideration, the purchasing corporation is not, in the absence of a contractual obligation so to do or of fraud, responsible for debts or liabilities of the selling corporation but on the other hand among other things, it is said in this opinion [page 436]:

> "Questions concerning the responsibility of the purchasing corporation for the debts and liabilities of the selling corporation have come before the courts of the country in many cases, and it is held practically without dissent that, although the purchasing corporation does not assume the payment of any of the debts or liabilities of the selling corporation, it will yet be made responsible for them if there was not consideration for the sale, or it was not in good faith, but for the purpose of defeating the creditors of the selling corporation, or where there has been a merger or consolidation of the corporations, or where the purchasing corporation took over from the stockholders all of the stock of the selling corporation, or where the transaction amounts to a mere reincorporation or reorganization of the selling corporation. It is also generally agreed that when these conditions exist the purchasing corporation will be responsible for all the debts and liabilities of the selling corporations, without reference to whether these debts or liabilities were created by contract or arose out of tort, or were liquidated or unliquidated."

See, also, Carter Coal Company v. Clouse, 163 Ky. 337, 173 S. W. 794; Harbison-Walker Refractories Company v. McFarland's Adm'r, 156 Ky. 44, 160 S. W. 798; Louisville & Nashville Railroad Company v. Biddell, 112 Ky. 494, 66 S. W. 34, 23 Ky. Law Rep. 1702; Harlan Public Service Company v. Eastern Construction Company, 254 Ky. 135, 71 S. W. (2d) 24. See, also, Skirvin Operating Company v. Southwestern Electric Company,

71 Okl. 25, 174 P. 1069, 15 A. L. R. 1104, where the purchasing corporation was held liable to creditors of a selling corporation in circumstances in many material respects the same as the case under consideration.

While there is some evidence to support appellant's contention that it acted in good faith in the purchase of the assets of the old corporation and paid a just and adequate consideration therefor, yet the fact that there was only a slight change in the corporation name and the same business was conducted by the same officers and personnel in the same offices and many other proven facts and circumstances so preponderate to sustain the chancellor in finding otherwise, as would forbid interference upon the part of the appellate court.

Appellant's claim that its liability on the old account in any event is limited to $90 is based on the theory that since such account amounts to only about 3 per cent of the total indebtedness of the old corporation appellee could not recover in a sum in excess of that per cent of the $3000 paid by it for the assets of the old corporation. We cannot read out of the authorities cited any support for this contention especially when applied to the proven facts and circumstances.

Applying the governing rule laid down in the authorities cited to the evidence the judgment should be upheld even in the absence of an express promise upon the part of appellant to pay. However, it is our view that there was sufficient evidence to establish such promise.

Finally, it is argued that the alleged oral promise of the officers of appellant to pay the account of the other corporation came within the statute of frauds and the exception to evidence in deposition concerning such promises should have been sustained. The principle contended for by appellant is correct but the evidence complained of was competent for other purposes and even if this evidence had not been competent we would not be authorized to reverse the judgment on that ground since the chancellor's finding is amply supported by other and competent evidence.

Judgment affirmed.