Joe Terry POYNER, by and through his statutory guardian, Dorothy Poyner, Plaintiff-Appellee,

v.

LEAR SIEGLER, INC., Defendant-Appellant.

No. 75–1939.

United States Court of Appeals, Sixth Circuit.

Argued March 30, 1976.

Decided Oct. 14, 1976.

Rehearing Denied Nov. 30, 1976.

Richard C. Roberts, Threlkeld, Whitlow & Roberts, Paducah, Ky., for defendant-appellant.

Charles A. Williams, Paducah, Ky., for Joe Terry Poyner.

George R. Effinger, Boehl, Stopher, Graves & Deindoerfer, Paducah, Ky., for L. A. Distributors, Inc.

Before PHILLIPS, Chief Judge, and McCREE and LIVELY, Circuit Judges.

McCREE, Circuit Judge.

Lear Siegler, Inc. (LSI) appeals from a judgment against it in behalf of Joe Terry Poyner (Poyner). The district court held LSI liable under a default judgment previously obtained by Poyner against Erma Werke GmbH [1] (Erma), LSI's wholly owned subsidiary. Because we conclude that under Kentucky law the separate corporate identities of LSI and Erma should not have been disregarded, we reverse.

Poyner, a sixteen year old minor, received a serious injury when the .22 caliber pistol with which he and a friend had been playing accidentally discharged. The weapon, manufactured by Erma, had been exported by another West German firm and was distributed in the United States by L. A. Distributors, Inc. (L.A.), a New York corporation. The gun had reached Kentucky when Poyner's friend gained access to it. Poyner is now a paraplegic as a result of his injury.

On July 18, 1969, Poyner filed an action in United States District Court for the Western District of Kentucky, alleging that his injuries had been caused by a defect in the pistol and seeking to recover damages from both L.A. and Erma. Pursuant to K.R.S. § 454.210, the long-arm statute, service was made on both defendants through the Secretary of State of Kentucky. Both defendants received actual notice of the action. Nevertheless, Erma elected not to appear to defend the suit, and after hearing proofs of Poyner's damages, the district court entered judgment for him in the amount of $398,830.77 on July 5, 1972.

However, because Erma has no assets within the United States, and because satisfying the judgment in West Germany would involve great effort and expense, Poyner sought assets in the United States that could be applied to the judgment. Accordingly, on July 5, 1973, plaintiff filed a supplemental complaint against LSI, a Delaware corporation, to hold LSI liable for the judgment against Erma. LSI's relationship with Erma had been disclosed by L.A. in a third party complaint filed on December 21, 1971, seeking indemnification or contribution from LSI should L.A. be held liable on Poyner's original complaint.

The district court entered judgment on the supplemental complaint against LSI on May 1, 1975. It found that LSI, as sole shareholder, had the right according to West German law "to interfere at any time in the daily concerns of Erma." It found that the two members of Erma's *aufsichtsrat*, or advisory board, were LSI personnel based in the United States, and that no formal meetings of that board were held, nor were records of meetings kept. It further found that LSI, exercising this control, had consciously adopted a "legal strategy" according to which Erma would not appear in this nor any other products liability action in the United States. The district court also found that LSI would then give

---

1. *See* Winkaus and Stratmann, "The Close Corporation in Germany—Management and Capitalization Problems for U.S. Controlled Subsidiaries," 28 *Bus.Law.* 1275 (1973), which the parties have stipulated into evidence. According to that article,

> [t]he GmbH is similar, though not identical to, the U.S. "Close Corporation" or the "Private Company" under English law. Most characteristic is that the capital in general is held by a few persons, individuals or corporations, and that in practice ownership and management are very often vested in the same persons.
>
> The GmbH is a corporation and thus a legal entity separate from its shareholders. It may acquire rights of its own and act under its own name. The shareholders do not share in property rights and other titles held by the GmbH.
>
> The liability of shareholders is limited to the amount of the nominal value of capital they hold in the GmbH (quota share). Once the nominal capital is paid in, no further claims can be made against the shareholders—unless the creditors show facts which result in "piercing the corporate veil," or establish a manifest case of willful detriment (BGB § 826). Although not identical, cases of "piercing the corporate veil" under German law are very similar to those under U.S. common law.
>
> *Id.* at 1276–1277.

"sub rosa assistance to other defendants . . . ."

The district court concluded that LSI had exercised its control of Erma to adopt a strategy designed to frustrate recovery for injuries, regardless of the merits of products liability claims, and had thereby worked "an unfair hardship on Erma's foreseeable American creditors." Therefore, the court decided that Erma's separate legal identity should be ignored and that LSI, as its sole shareholder, should be held responsible for Erma's obligations.

Because it regarded Erma as "nothing more than a factory owned by LSI," and because LSI had controlled the litigation, the district court, applying the doctrines of collateral estoppel and res judicata, refused to permit LSI to open the judgment against Erma and to contest the merits of plaintiff's case. Accordingly, it held that LSI was bound by the original judgment.

Three principal issues are presented in this appeal. The first, which Poyner contends that we cannot consider because LSI did not raise it timely, concerns the validity of the judgment against Erma. The resolution of this issue depends upon whether the Kentucky long-arm statute was applicable and properly followed, and whether its application to Erma is constitutionally permissible. The second is whether it was proper to pierce the corporate veil and thereby to hold LSI liable for Erma's obligation. The third is, if LSI should be held liable for Erma's obligations, whether the default judgment may be opened to permit LSI to contest the merits of the original action.

Because we hold that it was improper to disregard the separate corporate identities of Erma and LSI, it is unnecessary to decide the other two issues.

■ The question whether, in these circumstances, a corporation should be held liable for its corporate subsidiary's obligations that arise from the state law of products liability, is clearly a substantive issue governed by Kentucky law. *See Erie Rail-*

*road Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The approach of the Kentucky courts to piercing the corporate veil has been described as evincing "a general aversion for any disregard of the corporate entity." Campbell, "Limited Liability for Corporate Shareholders: Myth or Matter-of-Fact," 63 Ky.L.J. 23, 48 (1975). Poyner argues that we should expand the doctrine of *Minton v. Cavaney,* 56 Cal.2d 576, 15 Cal.Rptr. 641, 364 P.2d 473 (1961), which provides that the corporate veil should be pierced if a corporation is grossly undercapitalized, *see* 1 Fletcher, *Cyclopedia of the Law of Private Corporations* § 44.1 (1974), and apply it to this case because LSI "has refused to risk any of its subsidiaries' assets in this country." But Poyner has cited no cases, and we have found none, in which the Kentucky courts have followed the growing trend of denying corporate entity treatment for inadequate capitalization, except in the event of fraudulent reorganization. *E. g., Harlan Pub. Svce. Co. v. Eastern Constr. Co.,* 254 Ky. 135, 71 S.W.2d 24, 29 (1934). We do not believe that the Kentucky courts would so extend a doctrine which they have not yet adopted in its basic formulation.

■ Ownership and control of a corporate entity by the persons sought to be held individually liable is necessary but not sufficient by itself for denial of entity treatment. *Ky. Auto Mechanics Serv. Co. v. Ky. Auto Parts Co.,* 267 Ky. 531, 102 S.W.2d 1022 (1937) (one corporation owned the other's stock); *C. L. & L. Motor Express Co. v. Achenbach,* 259 Ky. 228, 82 S.W.2d 335 (1935) (two corporations had the same shareholders); *id.* at 340, *citing Bergenthal v. State Garage and Trucking Co.,* 179 Wis. 42, 190 N.W. 901 (1922) (two corporations had same shareholders, officers and offices). Before a Kentucky court will disregard the corporate entity, it must also determine that the artificial personality serves to shield individuals from legal responsibility for fraudulent or criminal acts, or that the form of organization is subversive of public policy.[2] *Big Four Mills v. Commercial*

2. Although occasional dictum suggests that "subversive of public policy" is an independent ground in Kentucky for disregard of the corporate veil, only once has the Court of Appeals

*Credit Co.*, 307 Ky. 612, 211 S.W.2d 831, 834 (1948). A corporation cannot "avoid . . . responsibility through the interposition of a mere legal fiction . . . ." *Hermitage Land and Timber Co. v. Scott's Executrices*, 263 Ky. 651, 93 S.W.2d 1, 4 (1936). The Kentucky courts will deny entity treatment only where "[t]he corporation was . . . organized to [or] has . . . in fact deprived [plaintiff] of any remedy he has . . . ." *Lowry Watkins Mfg. Co. v. Bullington Mfg. Co.*, 248 Ky. 285, 58 S.W.2d 591, 593 (1933).

■ There emerges, then, a but-for test according to which the corporate entity is disregarded only where control of the fictive corporate person achieves a result which could not otherwise have been achieved directly. *Lowry Watkins Mfg. Co., supra*, at 592. Accordingly, LSI is liable if its ownership and control of Erma deprived Poyner of a remedy against Erma which he would have possessed but for LSI's control.

The district court found that LSI had exercised its control over Erma consciously to adopt the following "scheme": an injured American consumer would be forced either to bring suit in Germany to effect recovery against the manufacturer, or to "be faced with a double legal hurdle to get to LSI's assets in the United States." The prospect of being required to litigate in Germany or to prove both the products liability claim and the case for piercing the veil in a court in the United States "would be prohibitive." Therefore, the court "found" that the arrangement imposed an unfair hardship on Erma's foreseeable American creditors, and that the separate legal identities should be ignored.

■ If these determinations are actually "findings," our review is limited to the clearly erroneous standard. F.R.Civ.P. 52(a). However, the fact that a trial court labels determinations as "findings" does not make them so if they are in reality conclusions of law. In that case, they are subject to unrestricted review. *Elyria-Journal Broadcasting Co. v. Lorain Journal Co.*, 298 F.2d 356 (6th Cir. 1961).

■ Whether it is appropriate to disregard the corporate entity, and whether Poyner would have to litigate both liability for the injuries and LSI's liability for Erma's obligations in order to recover from LSI, are clearly questions of law. Whether an arrangement works an "unfair" hardship is similarly a question of law. If a determination concerns whether the evidence showed that something occurred or existed, it is a finding of fact. However, if a determination is made by processes of legal reasoning from, or of interpretation of the legal significance of, the evidentiary facts, it is a conclusion of law. *Galena Oaks Corp. v. Scofield*, 218 F.2d 217, 219 (5th Cir. 1954). *See also Kippen v. Am. Automatic Typewriter Co.*, 324 F.2d 742, 745 (9th Cir. 1963) (whether there was "good cause" to discharge); *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3rd Cir. 1949) (whether carrots are "unique," permitting the remedy of specific performance). The issue whether a corporate arrangement works a hardship which is "unfair," and which therefore warrants denial of corporate entity treatment, is a question about the legal consequences which follow from the arrangement. It is therefore a conclusion of law.

The "unfairness" postulated by the district court is that the relationship of LSI to

appeared to rely upon it alone. In *Veterans Service Club v. Sweeney*, 252 S.W.2d 25 (Ky. 1952), the court determined that the corporate form was being used "to shield them from the consequences of these acts," but did not discuss the form of the arrangement and why it was regarded as no more than a fiction. The court mentioned only that one of the incorporators and officers was one of the managers of the club, and that the other two incorporators and officers had visited the club and seen gam-

bling conducted there. The court appeared to regard these facts as relevant only insofar as they showed that these individuals knew of and sanctioned the gambling.

In *Mordecai F. Ham Evangelistic Ass'n v. Matthews*, 300 Ky. 402, 189 S.W.2d 524 (1945), the court emphasized the public policy of construing tax exemptions narrowly, but ultimately relied on the determination that the corporation was no more than Ham's alter ego.

Erma relegated plaintiff to a choice between suing Erma in Germany and proving both liability of Erma for the injury and liability of LSI for Erma's obligations. However, unfair as this arrangement may have been, in order to meet Kentucky's strict but-for standard Poyner had to show that without LSI's exercise of control, plaintiff could have recovered from Erma. And Poyner has failed to demonstrate how LSI's control of Erma has made his recovery more difficult.

Relying upon *American Ry. Express v. Commonwealth*, 190 Ky. 636, 228 S.W. 433 (1920), appellee argues that the arrangement between LSI and Erma is a fraudulent scheme to avoid subjecting Erma's assets to the jurisdiction of the Kentucky courts. The court pierced the corporate veil in that case to relieve the plaintiff of the necessity of pursuing the assets of the defendant in New York. Appellee urges that before the development of long-arm jurisdiction, the remedy of recovery from New York assets was as useless as pursuit of Erma's assets in Germany is today.

In *American Ry. Express, supra,* the Commonwealth of Kentucky had originally brought suit against the Adams Express Co., which operated in Kentucky. After judgment for the Commonwealth, execution was returned, "No property found." Before the suit began, Adams had transferred all its assets to American in return for stock in American. Adams remained in existence only for the purpose of winding up its affairs. All of Adams' assets (that is, the shares of American) were in New York, while its former assets in Kentucky belonged to American. The court reasoned that when all assets of one corporation are transferred to another corporation, so are the liabilities of the first corporation. The court held that the rule should be extended, for the better protection of creditors, to cover the case in which the first corporation retains *some* assets, but in effect removes them from the jurisdiction.

In the case at bar, however, Erma began its existence as a German manufacturing business. In 1962, American Metal Prod-

ucts Co. purchased all shares of Erma; in 1966, LSI acquired all assets of American Metal Products Co., including the stock of Erma and of another GmbH. Aside from the merger of the two GmbH's, there is no suggestion that Erma's operations were altered in any material respect. Specifically, it is not suggested that before LSI's acquisition Erma appeared in actions against it in the United States, or subjected its assets to the jurisdiction of any American court, which, unlike the German courts, would of course be bound to accept the lawful decision of Kentucky courts under the Full Faith and Credit Clause.

Appellee's claim, therefore, must ultimately be that LSI's failure to change the status quo was sufficiently fraudulent to warrant disregard of the corporate identity of Erma. But in the fraudulent transfer situation, as in *American Ry. Express, supra,* on which appellee relies, the Kentucky Court of Appeals has ruled only that liability on a judgment may not be avoided by transfer of assets. *E. g., Payne-Baber Coal Co. v. Butler,* 276 Ky. 211, 123 S.W.2d 273 (1939). We do not believe, and appellee has cited no authority to persuade us, that the Kentucky courts would consider the failure to change the status quo to be a *fraudulent* avoidance of jurisdiction, because jurisdiction never existed in the first place.

The district court also determined that LSI should be held liable for Erma's obligation because it would be "unfair" to force Poyner to prove, *inter alia,* that this is an appropriate case for piercing the corporate veil in order to recover on the judgment against Erma. That argument is founded upon circular reasoning insofar as it relies upon the unfairness of having to make the case for denying separate entity treatment in order to establish the unfairness of having to prove just that.

█ So long as limited liability remains the rule, it is incumbent upon a plaintiff to demonstrate that the application of that rule to him is especially unfair, and indeed, according to Kentucky law, shields a fraudulent result. The LSI–Erma strategy of not appearing to contest products liability

claims in the United States did not increase the burdens of recovering on such claims against Erma beyond those which existed before LSI's participation.

■ Appellee also relies upon *Hermitage Land and Timber Co. v. Scott's Executrices,* 263 Ky. 651, 93 S.W.2d 1 (1936), to show that this is the sort of situation which would lead Kentucky courts to deny separate entity treatment. In that case, two individuals were the only officers of both Hermitage and the Fibrecraft Chair Co. They were also virtually the sole shareholders of Fibrecraft, which was in turn virtually the sole shareholder of Hermitage. Identifying themselves in the contract as officers of Hermitage, they signed a contract on Hermitage's behalf. They later sought to avoid Hermitage's obligation by relying upon a Kentucky statute which required written consent of the holders of two-thirds of a corporation's stock before the corporation might do certain acts. They argued that Fibrecraft's formal consent to Hermitage's contract was necessary, but absent. The court recognized "an attempt to avoid contractual responsibility through the interposition of a mere legal fiction . . . ." 93 S.W.2d at 4.

In this case, LSI, the sole shareholder of Erma, did not hold itself out as the authoritative party to a transaction, neither in the sale of this particular gun nor as a general matter. Nor did it attempt thereafter to avoid responsibility by interposing a fictive legal personality over which it had control between itself and Poyner. To the contrary, Erma is "between" LSI and Poyner. LSI's relationship with Erma was apparently discovered only long after the injury to Poyner, and indeed only a few months before the motion for default judgment against Erma was filed. There was no reliance by Poyner upon LSI's responsibility.

We are not persuaded by appellee's argument that because the fraudulent *result* was condemned by the Kentucky courts in the cited cases, we should condemn the result in this case because it is in fact fraudulent. This argument is an over-simplification of the Kentucky rule, which requires the presence of particular legal elements before the corporate veil will be pierced. As our analysis shows, Poyner has not carried the burden of demonstrating that those elements are present.

This is the sort of appealing case which might have led the Kentucky courts to re-examine the doctrine of limited liability, or at least to further limit its application. However, we must apply the law as it appears in existing Kentucky decisions. We believe that it would be an unprecedented extension of the Kentucky doctrine to disregard Erma's separate corporate existence in this case. The judgment of the district court is therefore REVERSED and the case is remanded with instructions to vacate the judgment against appellant and to enter judgment in its favor.