684 F.2d 1259
 30 Cont.Cas.Fed. (CCH) 70,299
 In re BUBBLE UP DELAWARE, INC., a Delaware corporation, Debtor.
Irving SULMEYER and Arnold Kupetz, Co-Trustees, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 81-5168.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 2, 1982.
Decided Aug. 23, 1982.
 
 Clifford J. Meyer, Buchalter, Nemer, Fields, Chrystie & Younger, Los Angeles, Cal., for plaintiffs-appellants.
 Philip Malinsky, Asst. U. S. Atty., Los Angeles, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before ELY, NELSON and CANBY, Circuit Judges.
 NELSON, Circuit Judge:
 
 
 1
 The controversy in this case centers around the proper characterization of a damages clause in a government contract. Specifically, the main issue is whether the clause is an allowable liquidated damages clause or a non-allowable penalty provision. We affirm the district court's conclusion that the clause was one for liquidated damages. We also affirm the district court's holding that the government did not fail to perform any condition precedent which would affect its entitlement to liquidated damages.
 
 I. BACKGROUND
 
 2
 In 1970, the debtor, Bubble Up Delaware, Inc. ("Bubble Up"), filed a Chapter X petition in bankruptcy. In 1976, the United States Department of Labor ("Labor") filed a final proof of claim against Bubble Up in the amount of $700,000. That claim was based upon a breach of a contract that had been entered into by the debtor and the United States acting through the Secretary of Labor.
 
 
 3
 The original contract provided that Labor would provide $1,000,000 to Bubble Up. In return, Bubble Up was to employ 275 hard-core unemployed residents of South Los Angeles for a period of six months. The final amended version of the contract provided that Bubble Up was to employ 300 persons for a period of nine months.[1] At the center of the present dispute is the proper characterization of the following damages provision in the amended contract:
 
 
 4
 (a) If the Contractor defaults in its performance of any part of the program described in ARTICLE I of this contract, the Contractor shall be liable to the Government for liquidated damages as follows:
 
 
 5
 ....
 
 
 6
 (2) If such default by the Contractor occurs with respect to its employment structured training and stock participation plans at its said production facility as provided hereinabove the Contractor shall refund to the government for each employment opportunity short of 300, the sum of Twenty Five Hundred Dollars ($2,500); PROVIDED, HOWEVER, that no such refund shall be required by the Contractor unless the number of persons certified by CEP ... is at least three (3) for each of the 300 employment opportunities which the Contractor has agreed to provide hereunder at its aforesaid facility.
 
 
 7
 The co-trustees objected that the above provision was a penalty or forfeiture to be disallowed under § 57(j) of the Bankruptcy Act[2], 11 U.S.C. § 93(j).[3]
 
 
 8
 The bankruptcy judge disallowed Labor's claim, finding that the damages provisions did not reasonably forecast just compensation for any harm which might be caused by a breach, and held the provision was a penalty. The bankruptcy judge also held that Labor, having failed to satisfy a condition precedent to the recovery of liquidated damages, was thereby precluded from recovering such damages.
 
 
 9
 We turn now to the issues that must be confronted here: first, whether the damages provision in the amended contract was a valid liquidated damages clause rather than an invalid penalty clause, and second, whether Labor is precluded from recovering liquidated damages by having failed to perform a condition precedent to recovery.
 
 II. LIQUIDATED DAMAGES CLAUSE
 A. Standard of Review
 
 10
 The bankruptcy judge's findings of fact can only be reversed on appeal to the district court if they are clearly erroneous. In this case, the district court reversed certain of the bankruptcy judge's findings of fact under the clearly erroneous standard. Therefore, we would review the bankruptcy judge's findings of fact under the same standard. Rose Pass Mines, Inc. v. Howard, 615 F.2d 1088, 1091 (5th Cir. 1980); Clancy v. First Nat'l Bank, 408 F.2d 899, 903 (10th Cir.), cert. denied 396 U.S. 958, 90 S.Ct. 430, 24 L.Ed.2d 422 (1969); Potucek v. Cordeleria Lourdes, 310 F.2d 527, 530 & n.9 (10th Cir. 1962), cert. denied 372 U.S. 930, 83 S.Ct. 875, 9 L.Ed.2d 734 (1963).[4] Under the "clearly erroneous" standard of review, a finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948).
 
 
 11
 The limitation that the clearly erroneous standard imposes on appellate review does not apply to review of conclusions of law. In re Howell, 638 F.2d 81, 82 (9th Cir. 1980); Lama Co. v. Union Bank, 315 F.2d 750, 752 (9th Cir. 1963). Where the facts in the record are not in significant dispute, our task is to determine whether a legal conclusion is contrary to law. Cf. In Re Amex-Protein Development Corp., 504 F.2d 1056, 1058 (9th Cir. 1974) (adopting district court's opinion reviewing referee's findings). The fact that a court labels determinations "Findings of Fact" does not make them so if they are in reality conclusions of law. Poyner v. Lear Siegler, Inc., 542 F.2d 955, 959 (6th Cir. 1976), cert. denied 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361 (1977).
 
 
 12
 In the instant case, the bankruptcy judge, under the heading "Findings of Fact," determined that the damages provisions of the amended contract were not a reasonable forecast of just compensation for any harm that might be caused by Bubble Up's breach. The district court reversed this finding as clearly erroneous. For reasons stated below we agree that the bankruptcy court's determination was clearly erroneous. Because of this holding, we need not decide whether such a determination is a question of law or fact; nor need we decide whether the appropriate standard of review is de novo review or the clearly erroneous standard. Suffice it to say that since the bankruptcy court's conclusion cannot stand up under the clearly erroneous test, ipso facto it would fall if review were de novo.
 
 B. Reasonableness of Damages
 
 13
 Under the principles of general contract law that apply to the construction of government contracts, Priebe & Sons, Inc. v. United States, 332 U.S. 407, 411, 68 S.Ct. 123, 125-26, 92 L.Ed. 32, 38 (1947), liquidated damages provisions are not penalties "(w)hen they are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract." 332 U.S. at 411, 68 S.Ct. at 126, 92 L.Ed. at 38. Thus, a basic requirement for a valid liquidated damages clause is that the liquidated amount be reasonable.[5]
 
 
 14
 In the instant case, the inclusion of the liquidated damages clause served to limit Bubble Up's potential liability. Under the clause, the debtor's maximum liability for complete failure to perform was $750,000, whereas, without the clause, the debtor could have been liable for more.[6] The sum of $2,500 was purposefully chosen as an estimate of government costs for training persons under another government program.[7] Furthermore, the employment period was believed necessary to rehabilitate a hard-core unemployed worker. The liquidated damages amount was less per worker than the amount Labor intended to pay Bubble Up under the contract.[8]
 
 
 15
 Finally, at the time the contract was entered into, it would have been very difficult to calculate actual damages in advance of breach. This is an important consideration for recovery of liquidated damages since such damages are most useful where "damages are uncertain in nature or amount or are unmeasurable, as in the case of many government contracts." Priebe & Sons v. United States, 332 U.S. at 411, 68 S.Ct. at 126, 92 L.Ed. at 38.[9]
 
 
 16
 In light of these circumstances, we hold it was fair and reasonable for the parties to set $2,500 as the amount of liquidated damages for each worker employed less than nine months.[10]
 
 The bankruptcy judge believed that:
 
 17
 Perhaps the most significantly unreasonable factor in the Government's application of an indiscriminate $2,500 figure to the Bubble Up contracts was its failure to acknowledge the benefits to the Government and the detriment to Bubble Up inherent in training an employee who did not remain on the job for the full 6 or 9 month period.
 
 
 18
 This analysis, however, misconceives the nature of the contract, which required an extended period of employment to rehabilitate the chronically unemployed. The parties bargained for a nine-month term and the contract explicitly includes such a term.
 
 
 19
 The damages are commensurate with the injury. The liquidated damages are proportionate to the number of employees not hired for the requisite period. A finer calibration is not necessary where the parties have bargained for a period of employment and where the value of less than full performance is questionable and difficult to calculate.III. LABOR DID NOT FAIL TO PERFORM A CONDITION PRECEDENT TO THE RECOVERY OF LIQUIDATED DAMAGES
 
 
 20
 Bubble Up contends that there was a condition precedent to its performance with which Labor failed to comply. According to Bubble Up, the condition precedent to its performance, and hence, to the government's entitlement to liquidated damages, was that the government first had to certify three persons for each employment opportunity that the contract required Bubble Up to supply.
 
 
 21
 Whether the contract, by its terms, contained such a condition is a matter of contract interpretation. The question of interpretation of a contract is a question of law subject to de novo review, and not a question of fact. In re Beverly Hills Bancorp, 649 F.2d 1329, 1334 (9th Cir. 1981); Energy Oils, Inc. v. Montana Power Co., 626 F.2d 731 (9th Cir. 1980). In his "Findings of Fact", the bankruptcy judge interpreted the contract to "mean that the CEP, the United States Employment Service Agency in California, or other such organizations designated by the Government, were required to certify three persons to Bubble Up, with none of such persons being employed by Bubble Up, as a condition precedent for each sum of $2,500 claimed by the Government ...." The district court, inappropriately applying the clearly erroneous standard of review, held that the bankruptcy court's finding was clearly erroneous. As noted above, the correct standard of review is de novo, and we apply that standard to the bankruptcy judge's interpretation of the contract.
 
 
 22
 The respective conclusions of the bankruptcy and district courts were based upon an interpretation of a clause in the amended contract providing that Bubble Up would refund $2,500 for each employment opportunity short of 300, but that the refund would not be required "unless the number of persons certified ... is at least three for each of the employment opportunities which the Contractor has agreed to provide hereunder at its aforesaid facility." If this clause meant, as the bankruptcy judge assumed, that Labor was required first to certify three persons for each employment position that was never filled, whether or not a real employment opportunity existed, then clearly Labor, by not certifying persons to fill such positions, violated a condition precedent. If, however, the clause is interpreted to mean that the parties intended that Labor's obligation to certify three persons for each employment opportunity arose only at the time Bubble Up provided that opportunity, then Labor never breached a condition precedent since those opportunities never arose.
 
 
 23
 The bankruptcy judge's finding that the clause required Labor to "certify three persons to Bubble Up, with none of such persons being employed by Bubble Up, as a condition precedent" is incorrect. If the parties had intended that Labor would certify three persons for a position, regardless of whether Bubble Up could ever provide them with a genuine job opportunity, then the clause would senselessly require Labor to certify persons for non-existent positions. Such an interpretation would violate the established principle of contract interpretation that "where one interpretation makes a contract unreasonable or such that a prudent person would not normally contract under such circumstances, but another interpretation equally consistent with the language would make it reasonable, fair and just, the latter interpretation would apply." Elte, Inc. v. S. S. Mullen, Inc., 469 F.2d 1127, 1131 (9th Cir. 1972). Conditions precedent are not favored and the courts will not construe stipulations as conditions unless required to do so by plain, unambiguous language. Lockwood v. Wolf Corp., 629 F.2d 603, 610 (9th Cir. 1980); United States v. Schaeffer, 319 F.2d 907, 911 (9th Cir. 1963), cert. denied 376 U.S. 943, 84 S.Ct. 798, 11 L.Ed.2d 767 (1964). In the present case, the language of the contract will not support a conclusion that there existed a condition precedent to Bubble Up's performance.
 
 
 24
 Because we hold that the liquidated damages clause is valid and that Labor did not fail to satisfy a condition precedent, we need not address the issue of actual damages.
 
 
 25
 AFFIRMED.
 
 ELY, Circuit Judge (dissenting):
 
 26
 I respectfully dissent. I am convinced that, contrary to the majority's conclusion, the Bankruptcy Court's findings and conclusions were correct and that the District Court's judgment should be reversed.
 
 
 27
 The initial portion of the majority opinion concerns the proper standard of review of the Bankruptcy Court's findings and conclusions. Implicit in this discussion is the conclusion, I believe, that we should review the Bankruptcy Court's findings directly and should not undertake some type of review of the District Court's conclusions. I do not wholly agree with this approach. If a District Court's conclusions of law are wrong, then we should correct them. Although the majority does not reach the point, I believe that the Bankruptcy Court's findings and conclusions can and should be upheld under both standards, the clearly erroneous standard and the contrary to law standard.
 
 
 28
 It is clear to me that the Bankruptcy Court applied the correct legal standards and that its factual findings pursuant to those legal standards were not clearly erroneous. The correct legal standards are: (1) was the liquidated damages clause the result of a reasonable effort by both parties to estimate the actual damages that might be sustained by the Government, and (2) was the liquidated damages clause in fact a reasonable forecast of just compensation of harm to the Government? The first inquiry focuses on the facts surrounding the negotiation of the contract; the second involves an "objective" comparison of the liquidated damages and the nature of the contract. Although my colleagues cite the applicable Supreme Court decision, Priebe & Sons, Inc. v. United States, they focus only on the issue of whether the damages clause was "reasonable." This issue is only a part of the overall inquiry that should be made. See Higgs v. United States, 546 F.2d 373, 377 (Ct.Cl.1976).
 
 
 29
 The Bankruptcy Court made findings of fact, which cannot be contested as clearly erroneous, that support its conclusion that the parties did not make a reasonable effort to estimate the actual damages to the Government in arriving at the damages clause. That court found as facts that: the contract was drafted by the Government; the Government admitted that $2500 was an "arbitrary" figure; the Government told Bubble Up that this was "the figure we need to have"; there were no conversations between the contracting parties about what a reasonable figure might be; the parties did not consider the nature of the various breaches that could occur; and the Government's evidence was that its intent in amending the contract was to "be pretty tough" with Bubble Up and that it considered the damages clause as a penalty clause. Particularly damaging was the testimony of the negotiators for the Government.[1]
 
 
 30
 The majority refers to none of these findings and ignores the requirement that a liquidated damages clause be the result of a reasonable attempt by both parties to estimate actual damages. See Priebe & Sons, 332 U.S. at 411, 68 S.Ct. at 125-26.
 
 
 31
 The damages clause also falls when considered on its face in comparison to the nature of the contract. This is the only approach taken by the majority, and it concludes that "a finer calibration is not necessary" when the Government has bargained for the employment of a certain number of people for a certain amount of time. I believe, however, that the law pertaining to liquidated damages does require a finer calibration. A flat sum that is imposed on the condition that the Government did not get a full 100% of its bargain seems to be the classic case of a penalty clause. Here the Government imposed a flat sum for each employee that Bubble Up had failed to employ for at least 9 months (6 months in the original contract). The flat sum fails to account for benefits accruing to the Government when Bubble Up employed someone for 8 months and 29 days. In fact, as the parties agree, Bubble Up could have employed all 300 employees, each for 8 months and 29 days, and still have been liable for the full amount of liquidated damages.
 
 
 32
 Moreover, the Bankruptcy Court cited evidence which established that the $2500 figure was not an accurate amount. And probably the most critical evidence showing that the damages clause was not related to any reasonable estimate of actual injury is the change between the original and the amended contract. In the amended contract the Government increased the minimum time periods and the minimum number of persons that Bubble Up was required to employ, yet the damages figure remained the same. Under the original contract Bubble Up could have employed 300 persons for 7 months each, and the Government would have received what it bargained for; under the amended contract, the Government would have been "damaged" in the full amount of the liquidated damages clause: $75,000. The testimony by the government negotiator clearly shows that the Government raised the minimum employment requirements not because it was bargaining for a better deal, but because it thought the increases were "a better indication of (Bubble Up's) willingness to perform."
 
 
 33
 In sum, all the facts show that the Government insisted on the damages clause, and the more stringent requirements of the amended contract, as a means of encouraging Bubble Up's compliance with the contract. This is the essence of a damages clause that is a penalty: when a provision "was included not to make a fair estimate of damages to be suffered but to serve only as an added spur to performance(,) ... courts do not give their imprimatur to such arrangements." Priebe & Sons, Inc., 332 U.S. at 413, 68 S.Ct. at 126. See also In re Plywood Co. of Pa., 425 F.2d 151, 155 (3d Cir. 1970); Brecher v. Laikin, 430 F.Supp. 103, 106 (S.D.N.Y.1977).
 
 
 34
 I would uphold the Bankruptcy Court and reverse the judgment of the District Court.
 
 
 
 [1]
 The amended contract provided that Labor was to withhold $50,000 of the $1,000,000 due until Bubble Up employed 300 workers for the requisite amount of time
 
 
 [2]
 This action was brought under the Bankruptcy Act of 1898 which was repealed by Pub.L. 95-598, Title I, § 101, Nov. 6, 1978, 92 Stat. 2549. The latter law was codified as new Title 11. All references herein, however, are to old Title 11
 
 
 [3]
 The section provides in pertinent part:
 "Debts owing to the United States ... as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained ...."
 
 
 [4]
 See Kentile Floors, Inc. v. Winham, 440 F.2d 1128, 1130 (9th Cir. 1971); Gross v. Fidelity & Deposit Co., 302 F.2d 338, 339-40 (8th Cir. 1962); Lines v. Falstaff Brewing Co., 233 F.2d 927, 930 (9th Cir.), cert. denied 352 U.S. 893, 77 S.Ct. 129, 1 L.Ed.2d 8 (1956)
 
 
 [5]
 A valid liquidated damages clause will not be a "penalty or forfeiture" within the meaning of section 57j of the old Bankruptcy Act. See note 2, supra
 
 
 [6]
 When the contract was entered into, it would have been difficult to calculate Labor's actual damages in the event of a complete breach by the contractor. Thus, damages might have been measured by Labor's out-of-pocket costs, which could have amounted to $950,000 under the contract. See note 1, supra. Under the above restitution theory, the contractor's potential liability was limited by the liquidated damages clause
 
 
 [7]
 The bankruptcy judge found that the provisions of the liquidated damages clause were "imposed" by Labor upon Bubble Up. Such a conclusion is contrary to reason and the facts of this case. We cannot understand how terms are "imposed" upon a major corporation represented by counsel in lengthy negotiations that enters into a potentially advantageous contract with the government. Furthermore, we doubt whether a finding that terms were "imposed" has any legal significance in this case, where there is no suggestion or finding that the contract was one of adhesion or that the terms were unconscionable
 
 
 [8]
 Thus, if both sides had fully performed, Labor would have expended $1,000,000 to employ 300 workers for nine months each, or $3,333 per worker. If Labor had withheld the last $50,000 because Bubble Up did not fully perform, then the expenditure would still have amounted to $3,166 per worker
 
 
 [9]
 Restatement of Contracts § 339 (1932) makes uncertainty of computation of damages a requirement for recovery of liquidated damages. Restatement (Second) of Contracts § 356 (1979) makes uncertainty only a consideration to be weighed against the reasonableness of the damages
 
 
 [10]
 The bankruptcy judge appears to have compared the original and amended contracts to illustrate the penal nature of the liquidated damages provision. The amended contract increased the number of persons Bubble Up was required to hire and increased the requisite employment period by three months. The amended contract, which reflects Labor's improved bargaining position, included terms that Labor apparently would have liked to include in the original contract. It would be unworkable if a liquidated damages clause were transformed into a penalty clause every time a contract was renegotiated
 
 
 [1]
 Mr. Ruttenberg, the Government's chief negotiator, gave the following instructions to his associates regarding "negotiating" the Amended Contract:
 "I said to them that, inasmuch as Bubble Up had been given two or three chances, had failed on each occasion to perform but yet had received over two-thirds of a million dollars, that we had to be pretty tough with Bubble Up and that we ought to go in there with the attitude that we're going to cancel the contract and exercise the penalty clause and cause repayment to be made for all 275 workers that were not employed....
 "But I said, 'Let's make it tougher on them. Let's increase the number of workers we're going to require them to employ, and let's increase the duration that they have to retain those people on their payroll, and that if Bubble Up isn't willing to accept those conditions, then forget about it and let's exercise our right to cancel the contract, if they're not performing.' "
 Mr. Ruttenberg's associates, Messrs. Granakis and Guttman, carried out his instructions at the meeting with Mr. Key in Los Angeles which resulted in the Amended Contract. Mr. Granakis testified that:
 (a) He threatened Bubble Up with termination of the Original Contract.
 (b) The increase from 275 to 300 employees was insisted upon by the Government as a "better indication of (Bubble Up's) willingness to perform."
 (c) The increase in duration of employment from 6 to 9 months was insisted upon by the Government as proof of good faith.
 Mr. Guttman added:
 (a) The Government was going to make the Amended Contract more stringent than the Original Contract
 (b) "(T)he nine-month period is, we were going to get somewhat more for our money than we had gotten before."
 (c) "I can tell you the general context is that we were going to get more definite, more tough, and try to protect the government's interests better than they had been in the (Original Contract)."