# Cab-Tek, Inc. v. E.B.M., Inc.

[571 A.2d 671]

No. 87-372

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed January 5, 1990

*Candon & Butterfield*, Rutland, for Plaintiff-Appellee.

*Fink & Birmingham, P.C.*, Ludlow, for Defendant-Appellant.

**Gibson, J.** Defendant E.B.M., Inc. appeals from a superior court decision finding it liable to plaintiff Cab-Tek, Inc. for debts owed plaintiff by Acousti-Phase, Inc., a corporation owned and controlled by the same individuals who owned and controlled E.B.M. Defendant argues that the evidence presented at trial did not support the court's finding of a de facto consolidation, which justified the "piercing of the corporate veil." We agree that there was no de facto consolidation. Nevertheless, because a de facto merger did occur, we affirm.

E.B.M. is a Vermont corporation formed in 1978 for the purpose of buying and managing real estate. In 1982, its sole stockholders and directors were Edward Antar and William Markowitz, who were also directors of Acousti-Phase, a New York corporation that manufactured and sold stereo speakers. Antar owned a majority interest in Acousti-Phase.

On October 13, 1982, Acousti-Phase was effectively shut down when a fire destroyed the manufacturing and storage facility it was renting from E.B.M. At the time of the fire, Acousti-Phase had an outstanding debt to Cab-Tek, a New Hampshire corporation that supplied it with cabinet housings for its stereo speakers. In early 1983, E.B.M. contracted with a New York corporation to assemble the speakers, affix the Acousti-Phase name, and sell the final product, primarily to former customers of Acousti-Phase. One of the major customers was a business in New York City owned by Antar. This arrangement continued for approximately two years.

In March of 1985, Cab-Tek obtained a judgment against Acousti-Phase in the amount of $26,470. Cab-Tek also sought a judgment against E.B.M., claiming that E.B.M. had, in effect, taken over and continued Acousti-Phase's operations. Relying on *Ostrowski v. Hydra-Tool Corp.*, 144 Vt. 305, 479 A.2d 126

(1984), the trial court concluded that, under the rules of corporate successor liability, E.B.M. was liable for Acousti-Phase's debt to Cab-Tek because (1) although no statutory merger or consolidation took place between Cab-Tek and Acousti-Phase, a de facto consolidation had occurred, and (2) E.B.M. had availed itself of Acousti-Phase's assets without giving any consideration in return. The court rejected E.B.M.'s argument that no consideration was required since E.B.M. had only "used" Acousti-Phase's assets, including its furniture, client list and brand name, while never actually acquiring them. In reviewing decisions of the trial court, we will not disturb the court's findings of fact and conclusions of law unless, taking the evidence in the light most favorable to the prevailing party, they are clearly erroneous. V.R.C.P. 52(a); *Finley v. Williams*, 142 Vt. 153, 155, 453 A.2d 85, 86 (1982).

E.B.M. contends that the trial court incorrectly and improperly applied *Ostrowski* to pierce the "corporate veil" and hold E.B.M. liable for the debts of then-dormant Acousti-Phase. In *Ostrowski*, a worker injured by a press-brake brought suit against the successor corporation of the manufacturer of the machine, relying alternatively on the "product line" theory and the "continuity of enterprise" approach. This Court, in affirming the dismissal of the action for failure to state a claim, held that, although successor liability generally attaches only where there has been a statutory consolidation or merger, there are exceptions to this rule:

> If the change [in the corporate entity] is accomplished by a sale of assets only, the purchasing corporation assumes no liabilities of the seller unless one of the following exceptions applies: (1) the buyer expressly or impliedly agrees to assume such liabilities; (2) the transaction amounts to a de facto merger or consolidation; (3) the purchasing corporation is merely a continuation of the selling corporation; (4) the sale is a fraudulent transaction intended to avoid debts and liabilities; (5) inadequate consideration was given for the sale.

144 Vt. at 307, 479 A.2d at 127.

■■ Applying this test, the court found that a de facto consolidation occurred when E.B.M. took over Acousti-Phase's business operations after the fire. Consolidation, which has a specific and unique meaning within the context of corporate law, occurs when the "combining corporations are dissolved and lose their identity in a new corporate entity." *Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 440 (7th Cir. 1977); *Ladjevardian v. Laidlaw-Coggeshall, Inc.*, 431 F. Supp. 834, 838 (S.D.N.Y. 1977); see also *Forest Laboratories, Inc. v. Pillsbury Co.*, 452 F.2d 621, 625 (7th Cir. 1971) (consolidation does not occur unless new corporation emerges). Acousti-Phase and E.B.M. did not dissolve themselves and form a new and independent entity. Therefore, there was no consolidation, de facto or otherwise.

■■ ■■ A de facto *merger* of the two corporations did take place, however, even though no statutory merger occurred. See *Wilson v. Fare Well Corp.*, 140 N.J. Super. 476, 485–86, 356 A.2d 458, 464 (1976) (de facto merger found where one corporation sold all its assets, including good will, to another corporation, which continued in seller's business). E.B.M. absorbed Acousti-Phase when it took control over all of the Acousti-Phase assets without consideration, and Acousti-Phase ceased to function. Indeed, the record shows that Markowitz, the sole owner of E.B.M. at the time of trial, believed that Acousti-Phase was no longer in existence due to its failure to pay state taxes. The fact that the trial court characterized the transfer as a de facto consolidation rather than a de facto merger does not warrant reversal. See *Circus Studios, Ltd. v. Tufo*, 145 Vt. 219, 222, 485 A.2d 1261, 1263 (1984) (Supreme Court will affirm a correct judgment even if the grounds stated in support of it are erroneous). A de facto merger, like a de facto consolidation, satisfies the second of the *Ostrowski* exceptions, and results in E.B.M.'s successor liability.

E.B.M., however, contends that *Ostrowski* is limited to products liability issues and that the exceptions enumerated therein which allow for successor liability apply only if the corporate change is accomplished by a sale of assets, and not, as in the instant case, where there has been no sale at all. We disagree.

*Ostrowski* is not, as defendant contends, limited to products liability cases. While the criteria set forth therein happened to be applied in a products liability suit, other jurisdictions have used the same test to impose successor liability for corporate debts in other types of cases. For example, in *Payne-Baber Coal Co. v. Butler*, 276 Ky. 211, 215, 123 S.W.2d 273, 275 (1938), the court relied on the test to affirm a judgment against a successor corporation for business debts resulting from materials furnished and services performed. In that case, the court held that the test would impose liability "'without reference to whether these debts or liabilities were created by contract or arose out of tort, or were liquidated or unliquidated.'" *Id.* at 215, 123 S.W.2d at 275 (quoting *American Ry. Express Co. v. Commonwealth*, 190 Ky. 636, 644, 228 S.W. 433, 436 (1920)).

Similarly, the United States Court of Appeals for the Fourth Circuit used the test to impose liability on a successor corporation for the business-related debts of a transferor corporation because the transferee corporation had notice that the transferor's relinquishment of its assets rendered it unable to pay its debts. *National Carloading Corp. v. Astro Van Lines, Inc.*, 593 F.2d 559, 563–64 (4th Cir. 1979). The court assumed that notice existed based on the fact that the two corporations had common directors and officers. *Id.* at 562. According to the court, the transaction between the two corporations was a bad-faith scheme to evade debts, and the transferee corporation was merely a continuation of the transferor. *Id.* at 564.

■ E.B.M.'s argument that the *Ostrowski* exceptions do not apply because there was no sale of assets is also without merit. In this case, one of the bases of the trial court's decision was that there had been a sale of assets for no consideration, and that *Ostrowski* thus imposed liability on E.B.M. for the outstanding obligations of Acousti-Phase. "[W]here all of the assets of one corporation are transferred to another corporation, and both corporations are under the same ownership, management, and control, the transferee corporation may be held responsible for the debts of the transferor if there was no consideration for the sale . . . ." *National Carloading Corp.*, 593 F.2d at 563; see also *Payne-Baber Coal Co.*, 276 Ky. at 215, 123

S.W.2d at 275 (same holding). It was undisputed at trial that E.B.M. used the corporate assets of Acousti-Phase for approximately two years following the fire without making any attempt to compensate Acousti-Phase in any way. It was thus reasonable for the trial court to conclude that there had been a transfer of assets for no consideration and that *Ostrowski* applied.

We hold that the trial court did not err in applying *Ostrowski* to the case at bar. Because we find that a de facto merger occurred when E.B.M. took over the assets and business of Acousti-Phase, the second exception from *Ostrowski* is applicable and successor liability is appropriate.

*Affirmed.*