FEDERAL DEPOSIT INSURANCE
CORPORATION, Plaintiff,
Appellant,

v.

PANELFAB PUERTO RICO, INC., et
al., Defendants, Appellees.

No. 83-1823.

United States Court of Appeals,
First Circuit.

Argued May 9, 1984.
Decided July 25, 1984.

John David Ferrer, Rio Piedras, P.R., with whom Thomas A. Brooks, Thomas A. Rose, Washington, D.C., Gonzalez & Alonso, and Raul E. Gonzalez Diaz, Hato Rey, P.R., were on brief, for appellant.

Nancy Pujals, Hato Rey, P.R., with whom Luis R. Mellado, and Mellado, Mellado & Hernandez, Hato Rey, P.R., were on brief, for appellees.

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and PETTINE,* Senior District Judge.

* Of the District of Rhode Island, sitting by desig-    nation.

PETTINE, Senior District Judge.

On March 31, 1978, the Secretary of the Treasury of the Commonwealth of Puerto Rico determined that the Banco Crédito y Ahorro Ponceño (the Bank) was insolvent, ordered the Bank closed, and appointed the Federal Deposit Insurance Corporation (FDIC) as the Bank's receiver. Pursuant to 12 U.S.C. § 1823(c), the FDIC purchased certain assets of the Bank, including a promissory note executed in 1977 by Panelfab Puerto Rico, Inc. (Panelfab) in the amount of $200,000. The district court found that the Bank issued the note in order to evidence a line of credit in that same amount and that "[t]he line of credit after 1968 was extended from $200,000.00 to $400,000.00 and later to $700,000.00, and money was borrowed and paid accordingly." Appendix at 46a–47a. The Bank made periodic advances to Panelfab against this line of credit, and on the date of the Bank's closing Panelfab owed the Bank $127,179 plus interest. It is uncontested that Panelfab still owes this amount, now to the FDIC.

On June 4, 1981, the FDIC filed suit for the collection of this debt against Panelfab, Panelfab International Corporation (said to be Panelfab's parent company), and the co-appellees, Milton N. Fisher and José Rapaport. The district court found that Fisher and Rapaport had guaranteed all debts of Panelfab to the Bank as per a "Continuing Letter of Guarantee" executed by them on August 16, 1968. This appeal arises from the district court's dismissal on the merits of the complaint as to Fisher and Rapaport in accordance with the court's conclusion that they had "effectively [given] a written notice to the Bank of the substitution of their personal guarantees for other collateral and, therefore, of the cancellation of their personal guarantees nineteen (19) months before the date of the

issuance of the note for $200,000.00 by Panelfab." Final judgment at 4.

The FDIC says that "[t]he only major 'fact' in dispute is if appellees did validly cancel or revoke their continuing letter of guaranty." Appellant's Brief at 9. Despite the FDIC's characterization of this question as one of fact,[1] we believe that it is "the *legal effect* to be accorded the district court's findings of basic, historical fact," *Washington v. Watkins*, 655 F.2d 1346, 1353 (5th Cir.1981), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982) (emphasis supplied), that is dispositive of the issue, for reasons discussed below. Accordingly, we are free to substitute our own judgment for that of the district court with regard to this issue. *Id.* As will be seen, however, we have no need to do so in this case.

The guaranty form, which was supplied by the Bank and signed by Fisher and Rapaport, stated in part:

> This is a continuing guaranty and shall remain in full force and effect until you [the Bank] have in fact received notice in writing at your above mentioned office that the same has been revoked by the undersigned. This guaranty may not be cancelled or revoked in any other manner....

Appendix at 61a.

The FDIC admits that this paragraph "clearly establishes" the appellees' right to cancel the guaranty unilaterally and at will. Appellant's Brief at 12. Furthermore, the FDIC says that on June 24, 1975 a "so-called analyst of the Bank" submitted to the Bank's vice-president a memorandum in which he analyzed certain uncertified financial statements of Panelfab. In the memorandum the analyst stated: "At the present time there are $200M due [to the Bank from Panelfab] without a guarantee. We understand that the contracts handed over

---

1. The FDIC may well have characterized this question as one of fact because the district court's statement that Fisher and Rapaport "*effectively* gave a written notice ... of the cancellation of their personal guarantees" (emphasis supplied) was labeled by the court itself as a finding of fact. However, "[t]he fact that a court labels [its] determinations 'Findings of Fact' does not make them so if they are in reality conclusions of law." *In re Bubble Up Delaware, Inc.*, 684 F.2d 1259, 1262 (9th Cir. 1982). *Accord, Poyner v. Lear Siegler, Inc.*, 542 F.2d 955, 959 (6th Cir.1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361 (1977).

as guarantees are old ones. An investigation should be made as to the effectiveness and validity of the same." Appendix at 64a, 68a. *See* Appellant's Brief at 5.

On January 26, 1976 (again, according to the FDIC), the manager of the Bank's San Juan branch sent a letter to Panelfab's executive vice-president, who, rather interestingly, was himself a former manager of the Bank. The letter stated in part:

> The collateral in our possession does not show the existing contracts for actual debts since all have expired and at the time we find ourselves without any guarantee as to the debts of Panelfab of Puerto Rico, Inc.
>
> In view of the above, we are submitting guarantee blanks to substitute the previous ones so they be [sic] properly notarized and returned to this office. At the same time, we will appreciate that you mail us the agreement of the Board of Directors of Panelfab International, Inc., that authorizes the guarantees of $700,-000 and $400,000 to be subscribed. We also request hereto a recent financial statement of Mr. Milton Fisher and Jose Rapaport since they are now subscribing a new guarantee of $200M. We include photostatic copies of the guarantees for your convenience.
>
> Appendix at 69a, 72a. *See* Appellant's Brief at 6.

On February 2, 1976, Panelfab's executive vice-president responded to the Bank's letter of January 26. The response stated in part:

> To my understanding and according to our records, the line of credit of Panelfab Puerto Rico, Inc., of $700,000 is guaranteed as follows:
>
> A—Guarantee letter signed by Panelfab Puerto Rico, Inc. for $700,000
>
> B—Assignment of contracts, mainly of the Dept. of Public Education
>
> C—Resolution of Panelfab Puerto Rico and Panelfab International not to pay

dividends without your specific authorization.

> *The personal guarantees of Mr. Milton Fisher and Jose Rapaport were substituted some time ago by the aforementioned guarantees* since our corporation became a public one.
>
> Appendix at 74a (emphasis supplied). *See* Appellant's Brief at 6–7.

The district court stated that, although the Bank received the letter on February 11, 1976, "[n]o evidence has been submitted to the effect that the bank objected or otherwise replied" to Panelfab's February 2 letter. Final Judgment at 4. In any case, the FDIC says that on August 5, 1977,[2] Panelfab issued a promissory note to the Bank for $200,000 plus interest. This is the note for which repayment remains outstanding. Appellant's Brief at 7.

Other evidence suggests that, despite the February 2, 1976, letter, the Bank nevertheless believed this note to have been secured by the personal guarantees of Fisher and Rapaport. *See* Appellant's Brief at 7–8 and portions of the Appendix cited therein. At this juncture, however, what the Bank believed is beside the point. Similarly, it matters not if the Bank did in fact know of the alleged cancellations when it loaned Panelfab the $200,000 on the basis of the August 5, 1977, promissory note. The only issue of immediate relevance to this appeal is whether the district court was correct in concluding that Panelfab's letter of February 2, 1976, *as a legal matter*, constituted effective notice of the cancellations as required by the guaranty agreement so that Fisher and Rapaport were not liable for repayment of the August 5, 1977, loan.

The FDIC says that

> [a] close reading of the [guaranty agreement] discloses that in order for the guaranty to be validly cancelled or revoked, the following conditions must be met:

> at 2–3. This difference is inconsequential.

---

**2.** The district court found the note to have been issued on September 6, 1977. Final Judgment

(1) That *notice* is given to the BANK in *writing;*

(2) that the BANK in fact receive such notice; and

(3) that it be *revoked by the guarantors.*

Appellant's Brief at 13 (emphasis in original).

The FDIC complains that Panelfab's letter, which stated only that Fisher's and Rapaport's "personal guarantees ... were substituted some time ago" by other guarantees, was "insufficient in itself to have the legal effect of a notice of cancellation, since it does not meet and even contradicts the ... three conditions or requirements" outlined above. Unfortunately, the FDIC does not explain with any clarity *why* the letter is insufficient in this way. We acknowledge, however, that the letter merely refers to cancellations apparently considered by its author to be accomplished facts; the letter does not reflect an intention to notify the Bank for the first time of a decision by the appellees to cancel their guarantees.[3] But it cannot be denied that that letter would serve to notify any reasonable reader the Fisher's and Rapaport's personal guarantees were no longer in effect. Unless we allow the trees to obscure our view of the forest, we must say that the letter met the guaranty agreement's requirements for notice of cancellation. Only the most hypertechnical interpretation of the agreement would dictate otherwise.

In reaching this conclusion, we do not mean to fuse the question of notice in fact with that of legally sufficient notice. As we have explained above, it does not matter whether the Bank actually knew of the cancellations. The Bank may have had such knowledge as early as 1975, *see supra* note 3, but if the notice that "delivered" the knowledge had not met the requirements of the guaranty agreement (by, say, consisting only of verbal notice), the fact of the Bank's knowledge would have been without legal significance. Or, the Bank may *not* have had actual knowledge of the cancellations even after it received the letter, as other evidence cited above suggests. Once again, the only question is the letter's legal significance. Here we hasten to add that, had the letter been received by the Bank after the August 5, 1977, loan was made, it alone would have been insufficient as a notice of cancellation, of course. Happily for the appellees, it was received long before the loan was made.[4] Accordingly, we see no error in the district court's conclusion that the appellees gave effective notice of their cancellation of their personal guarantees and thus are not personally liable for repayment of the August 5, 1977, loan.

The FDIC's only other argument is founded upon 12 U.S.C. § 1823(e), which provides:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a [Federal Deposit Insurance] loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

---

**3.** Indeed, the wording of the letter suggests that some form of notice of the cancellations had in fact been given earlier, as does the 1975 memorandum by the Bank's analyst. For whatever reason, if this earlier notice ever existed, it never found its way into this case, and the appellees' defense must succeed or fail on the basis of the February 2, 1976, letter.

**4.** The FDIC also argues that the guaranty agreement required that effective notice of cancellation be made only by Fisher and Rapaport themselves. We find no such limitation in the guaranty agreement, which requires only notice "that the [guaranty] has been revoked" by Fisher and Rapaport, not that they themselves provide the notice.

The FDIC contends that, even if Fisher and Rapaport did cancel their guarantees in a legally sufficient manner, under § 1823(e) the cancellation is no defense to the FDIC's attempt to collect on the August 5, 1977, loan. It is true that § 1823(e) "makes invalid an agreement which diminishes the FDIC's interest in an asset unless certain procedures are followed," *FDIC v. de Jesus Velez*, 678 F.2d 371, 375 (1st Cir.1982), and that there is nothing in the record to reflect the guaranty agreement's "approv[al] by the board of directors of the bank or its loan committee," as § 1823(e)(3) requires. We need not reach the merits of the FDIC's contention, however, because it is pervaded by a significant anomaly. The FDIC asserts that the *cancellation* of the letter of guaranty "constitutes ... the invocation of an agreement which tends to diminish or defeat" the FDIC's right in this case. Appellant's Brief at 45. Because the cancellation itself cannot be an agreement, the agreement to which the FDIC refers can only be the letter of guaranty, which includes the clause outlining the means of a unilateral cancellation. Therefore, the FDIC is asking this court to invalidate for § 1823(e) purposes the same agreement on which the FDIC brought the action in the first place. This we refuse to do, instead following the "general rule that a party to litigation will not be permitted to assume inconsistent or mutually contradictory positions with respect to the same matter in the same or a successive series of suits." *Gleason v. United States*, 458 F.2d 171, 175 (3d Cir.1972). Specifically, we will not consider the guaranty agreement as a whole to be valid for the purpose of collecting on the debt only to invalidate under § 1823(e)(3) a particular option contained in the agreement that, when exercised according to its terms, is a defense to that collection. Were we to do so, the effect would be to prevent the guarantors from ever cancelling their letter of guaranty without an acknowledgement in the board of director's or loan committee's minutes, thus depriving the guarantors of their unilateral right of cancellation that even the FDIC acknowledges was intended by both parties when the guaranty agreement was signed in 1968. We do not believe that through this statute Congress sought to reform an agreement in so drastic a manner and yet leave that agreement standing for the purpose of collection by the FDIC. Accordingly, we conclude that the FDIC's argument with regard to § 1823(e) is without merit.

In light of the above, the judgment of the district court is AFFIRMED.