USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 92-2135 LESLIE LEVY, AS TRUSTEE OF 225 COMMONWEALTH TRUST, Plaintiff, Appellee, v. FEDERAL DEPOSIT INSURANCE CORPORATION, ET AL., Defendants, Appellees. ____________________ WOLF WEINHOLD, ETC. Plaintiff, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Feinberg,* Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Thomas N. O'Connor with whom Michael G. Bongiorno and Hale and ___________________ ____________________ _________ Dorr were on brief for Wolf Weinhold, etc. ____ Mark P. Szpak with whom William L. Patton, James L. Sigel, Ropes _____________ _________________ ______________ _____ & Gray, Bruce V. O'Donnell, Managing Attorney, Ann S. Duross, _______ ____________________ _______________ Assistant General Counsel, Colleen B. Bombardier, Senior Counsel, and _____________________ Barbara S. Woodall, Counsel, were on brief for FDIC. __________________ ____________________ October 19, 1993 ____________________ ____________________ *Of the Second Circuit, sitting by designation. STAHL, Circuit Judge. Plaintiff-appellant Wolf ______________ Weinhold1 commenced suit in state court against a bank and its subsidiary for, inter alia, breach of a written warranty _____ ____ agreement. The bank counterclaimed, seeking payment from Weinhold of a facially unqualified promissory note and personal guarantee. After the bank failed, the FDIC, in its capacity as receiver, removed the proceedings to federal court, and sought summary enforcement of the note and guarantee. The district court granted the FDIC's motion for summary judgment on the note, and, in the same order, dismissed Weinhold's warranty claims against the bank's subsidiary. We affirm. I. I. __ FACTUAL BACKGROUND AND PRIOR PROCEEDINGS FACTUAL BACKGROUND AND PRIOR PROCEEDINGS ________________________________________ The corporate affiliations of the relevant parties are complex, so we begin by tracing them in some detail. First American Bank for Savings ("First American"), a federally insured savings bank, owned several subsidiary corporations which were engaged in the development of real estate projects in the Boston area. One such wholly-owned subsidiary, First American Development Corporation IV ("FADC- ____________________ 1. Weinhold brought suit in his individual capacity and in his capacity as trustee of 225 Commonwealth Trust (the Trust). References to Weinhold will hereinafter apply to him in both capacities unless otherwise noted. -2- 2 IV"),2 formed a joint venture with H&P Associates Limited Partnership II ("H&P"). The joint venture, known as Commonwealth-Marlboro Associates ("CMA"), acquired an apartment building at 225 Commonwealth Avenue ("the property") in Boston, with the intention of converting the property to residential condominiums.3 CMA hired GVW, Inc. ("GVW"), a wholly-owned subsidiary of H&P, as general contractor for renovation work on the property. During April 1986, Weinhold and Leslie Levy4 became interested in buying the property from CMA. To that end, they formed 225 Commonwealth Trust ("the Trust"). On June 30, 1986, Weinhold, on behalf of the Trust, bought the property from CMA. GVW had not yet completed renovations to the property, and under the terms of the purchase and sale agreement between CMA and Weinhold, the work of completing the renovations was left to GVW. Among other terms, the purchase and sale agreement included the following paragraph: [CMA] and [GVW] shall enter into a supplementary agreement with [Weinhold] warranting, in favor of [Weinhold]: (a) the construction of the improvements ____________________ 2. FADC-I through III, and FADC-V through IX were also wholly-owned subsidiaries of First American, and were named as defendants. Weinhold does not appeal the rulings below as to these parties. 3. CMA also acquired a second apartment building in Boston, which is not at issue in this case. 4. Levy, a party below in her capacity as trustee, is not a party to this appeal. -3- 3 constituting the Project for a period of one (1) year after the Project is [s]ubstantially [c]ompleted, and (b) the structural improvements at the [property] related to the Project for a period of five (5) years after the Project is [s]ubstantially [c]ompleted. The warranties set forth in such side agreement shall survive the Closing Date. On September 3, 1986, in compliance with this contractual provision, CMA executed a document in which it warranted GVW's work on the property. Because FADC-IV was a joint venturer in CMA, both the purchase and sale agreement and the September 3, 1986, warranty were executed by officers of FADC-IV. In addition to purchasing the property from CMA, Weinhold also obtained financing for his purchase of the property through First American, FADC-IV's parent company, borrowing $2.4 million from First American. The loan was evidenced by a promissory note signed by Weinhold in the amount of $2.4 million, and repayment was secured by Weinhold's personal guarantee and by a first mortgage on the property. Shortly after the sale, disputes arose between Weinhold and GVW regarding the completion of the renovations. As a result, Weinhold terminated GVW as general contractor. In June of 1987, based on GVW's failure to properly complete the required renovations, Weinhold brought suit in Massachusetts's Suffolk County Superior Court against FADC- -4- 4 IV, H&P and GVW alleging, inter alia, breach of contract and _____ ____ breach of warranty by all defendants. Foremost among Weinhold's claims was his allegation that the renovations did not comply with relevant zoning provisions. Weinhold subsequently added First American as a defendant, arguing that FADC-IV was an alter ego of First American. In essence, Weinhold argued that First American was liable for FADC-IV's actions, including FADC-IV's warranty of GVW's renovation work. First American counterclaimed, alleging that Weinhold had failed to make mortgage payments. First American sought payment of the note and enforcement of Weinhold's guarantee. On October 19, 1990, First American was declared insolvent and the FDIC was appointed receiver. The FDIC removed the case to federal district court, and sought summary judgment on the note and guarantee. In granting the FDIC's motion for summary judgment, the district court ruled that Weinhold had failed to offer proof of any defense to payment on the note and guarantee sufficient to satisfy the requisites of D'Oench, Duhme & Co. ____________________ v. FDIC, 315 U.S. 447 (1942). In a second ruling, the court ____ dismissed the breach of warranty claims that had originally been brought against FADC-IV. The court reasoned that Weinhold's warranty claims against FADC-IV, like his defenses to the FDIC's counterclaim, failed to satisfy the demands of -5- 5 the D'Oench doctrine. Upon review, we affirm both rulings. _______ II. II. ___ DISCUSSION DISCUSSION __________ A. Standard of Review ______________________ Our review of summary judgments is plenary. Rivera-Ruiz v. Gonzalez-Rivera, 983 F.2d 332, 333-34 (1st ___________ _______________ Cir. 1993). "[W]e read the record and indulge all inferences in a light most favorable to the nonmoving party." Id. at ___ 334. Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id. at 333. ___ Moreover, we are free to affirm a district court's ruling "on any ground supported in the record even if the issue was not pleaded, tried or otherwise referred to in the proceeding below." De Casenave v. United States, 991 F.2d 11, 12 n.2 ___________ ______________ (1st Cir. 1993) (citations omitted). B. Weinhold's Defenses to Payment of the Note _____________________________________________ In contending that the district court improperly granted the FDIC's motion for summary judgment, Weinhold has done no more than press his affirmative warranty claims. The bulk of Weinhold's appellate brief is dedicated to arguing that his warranty claims against First American survive both -6- 6 D'Oench and 12 U.S.C. 1823(e), which has been loosely _______ described as D'Oench's codification.5 Apparently, Weinhold _______ assumes that a viable breach of warranty claim, based on CMA's written warranty of GVW's construction work, would excuse payment on the promissory note. Because Weinhold's assumption in this regard is erroneous, we need not linger long over this argument. The possibility of valid set-off or recoupment claims does not preclude the summary enforcement of debt instruments. See, e.g., Hunt v. Bankers Trust Co., 689 F. ___ ____ ____ _________________ Supp. 666, 672 (N.D. Tex. 1987). Weinhold's breach of warranty claims are no more than set-off or recoupment claims. They involve issues of zoning, workmanship and other matters relating to GVW's work on the renovation project, rather than issues of liability between Weinhold and First American on the note and guarantee. Even were we to disregard FADC-IV's corporate form, as we are repeatedly urged to do by Weinhold, we would find, at most, that First American and Weinhold entered two separate agreements. The agreement regarding the loan of $2.4 million, on one hand, is evidenced by the note, the mortgage and the personal ____________________ 5. Weinhold argues at great length that First American actually "approved" both the purchase and sale agreement and the September 3 warranty agreement, despite the fact that both agreements were signed by officers of FADC-IV. As we understand it, this contention is aimed solely at showing that Weinhold's affirmative warranty claims survive D'Oench _______ and 1823(e). -7- 7 guarantee. FADC-IV's obligation to convey title to Weinhold and to warrant GVW's work, on the other hand, arises out of the entirely separate purchase and sale agreement. Simply put, GVW's allegedly unacceptable workmanship does not relieve Weinhold of his obligations under the note and guarantee.6 Cf. Koch v. Koch, 903 F.2d 1333, 1335 (10th ___ ____ ____ Cir. 1990) (affirming summary judgment in favor of plaintiffs in real estate transaction notwithstanding defendant's claims based on separate stock transaction executed between the same parties on the same day); Exchange Nat'l Bank of Chicago v. _______________________________ Daniels, 768 F.2d 140, 143 (7th Cir. 1985) (affirming summary _______ judgment on claim for payment of facially unconditional note where defendant's allegations did not constitute a defense to payment). To the extent that Weinhold's appeal raises any defenses other than his mistaken reliance on his affirmative warranty claims, it does so in an ineffective manner. This court has often warned litigants that issues raised ____________________ 6. To the extent that the issue of GVW's workmanship could ever provide a defense to payment of the note, it could only constitute a defense of fraud in the inducement, a defense which Weinhold raised in state court. However, the Supreme Court has made clear that 1823(e) precludes the defense of fraud in the inducement where the FDIC is suing on a facially unqualified promissory note. See Langley v. FDIC, 484 U.S. ___ _______ ____ 86, 94 (1987). See also In re 604 Columbus Ave. Realty ___ ____ _________________________________ Trust, 968 F.2d 1332, 1346 (1st Cir. 1992). Moreover, to the _____ extent that Weinhold attempts to resurrect on appeal his claims of deceit, negligent misrepresentation, and violations of Massachusetts consumer protection laws, such claims are similarly barred by Langley. _______ -8- 8 ineffectively are deemed waived. E.g., In re: Nelson, No. ____ ______________ 92-2408, slip op. at 8 n.6 (1st Cir. June 3, 1993). In sum, even if Weinhold's warranty claims are valid, they are nonetheless based solely on FADC-IV's written warranty of GVW's work. As such, they amount to set-off or recoupment claims, rather than defenses to his obligations on the note and guarantee. Thus, they do not preclude the entry of summary judgment in favor of the FDIC for enforcement of the note and guarantee. C. Weinhold's Warranty Claims Against FADC-IV ______________________________________________ Relying on Howell v. Continental Credit Corp., 655 ______ ________________________ F.2d 743, 746 (7th Cir. 1981) and its progeny, Weinhold argues that his breach of warranty claims survive D'Oench due _______ to the fact that they are based on documents which evidence bilateral obligations. See, e.g., id. (holding that neither ___ ____ ___ D'Oench nor 1823(e) apply "where the document the FDIC _______ seeks to enforce is one . . . which facially manifests bilateral obligations and serves as the basis of the lessee's _________ defense"). Weinhold's reliance on Howell is misplaced. In the ______ various cases employing the Howell exception, or similar ______ reasoning, the claims or defenses which the non-governmental party seeks to enforce are contained either in the very ______ instrument which the governmental party seeks to enforce, see, e.g., Howell, 655 F.2d at 747 (holding that when "the ___ ____ ______ -9- 9 asset upon which the FDIC is attempting to recover is the ___ very same agreement that the makers allege has been breached ___________________ by the FDIC's assignors, 1823(e) does not apply"); FDIC v. ____ Panelfab Puerto Rico, Inc., 739 F.2d 26, 30 (1st Cir. 1984) ___________________________ (holding that the FDIC may not invoke 1823(e) to invalidate claims which arise from "the same agreement on which the FDIC brought the action in the first place"); FDIC v. Aetna ____ _____ Casualty and Sur. Co., 947 F.2d 196, 206-07 (6th Cir. 1991) ______________________ (applying Howell's reasoning to defenses contained in ______ bilateral bond agreement which FDIC sought to enforce); or __ they are contained in closely related, or "integral" loan documents. See Resolution Trust Corp. v. Oaks Apartments ___ _______________________ ________________ Joint Venture, 966 F.2d 995, 1000-01 (5th Cir. 1992) _______________ (applying Howell exception to a liability limitation clause ______ contained in loan guarantee); FDIC v. Laguarta, 939 F.2d ____ ________ 1231, 1238-39 (5th Cir. 1991) (applying Howell-type rationale ______ to a loan agreement and modification agreement that were "integral to the loan transaction"); Baumann v. Savers Fed. _______ ___________ Sav. & Loan Ass'n, 934 F.2d 1506, 1517-18 (11th Cir. 1991) __________________ (applying Howell exception to claims based on a "schedule ______ dictated in the loan documents"), cert. denied, 112 S. Ct. _____ ______ 1936 (1992). To the extent that Weinhold argues that the purchase and sale agreement in this case is an integral part of Weinhold's financing arrangements, we disagree. Thus, -10- 10 even were we to disregard FADC-IV's status as a corporation separate from its parent, First American, we are still left with two distinct agreements, one which governs the purchase and renovation of the property, and the other which governs the financing thereof. Cf. Cardente v. Fleet Bank of Maine, ___ ________ ____________________ Inc., 796 F. Supp. 603, 612-13 (D. Me. 1992) (declining to ____ apply Howell exception to plaintiff's claims arising from a ______ lease between plaintiffs and failed bank where FDIC sought enforcement of a promissory note and mortgage on the leased property which were facially unrelated to the lease). Accordingly, the Howell exception to D'Oench does not apply ______ _______ to Weinhold's claims. Given that Weinhold offers no other basis for challenging the district court's dismissal of his warranty claims, we affirm that dismissal. III. III. ____ CONCLUSION CONCLUSION __________ For the foregoing reasons, the order of the district court granting summary judgment in favor of the FDIC and dismissing Weinhold's breach of warranty claims is Affirmed. No costs. Affirmed No costs ________ ________ -11- 11