**REMINGTON INVESTMENT, INC., Plaintiff**

v.

**QUINTERO & MARTINEZ CO., INC. et al, Defendants.**

**Civil No. 94–2762(HL/ADC).**

United States District Court, D. Puerto Rico.

Jan. 23, 1997.

Translations of Documents (docket No. 7) is **NOTED**.

Frank Gotay–Barquet, Feldstein, Gelpí, Hernández & Gotay, San Juan, for Plaintiff.

Jesús E. Cuza–Abdala, Goldman, Antonetti & Córdova, San Juan, for Defendants.

## OPINION AND ORDER

DELGADO–COLON, United States Magistrate Judge.

Plaintiff Remington Investments, Inc. ("Remington" or "plaintiff") filed the present action against defendants Quintero & Martínez Co., Inc. ("Quintero & Martínez"), Emilio J. Martínez Domínguez ("Martínez"), Arturo E. Quintero Quiñones ("Quintero"), Yolanda Martínez ("Mrs.Martínez") and the conjugal partnership established between the latter two. Plaintiff seeks payment of $67,521.03 plus interest accrued which defendants, jointly and severally, allegedly owe plaintiff as a result of a revolving credit line

contract plaintiff acquired from now-extinct Banco Nacional, N.A. ("the Bank").

This Court must now consider Remington's resubmitted motion for summary judgment (Docket Nos. 26–28, 39, 62). In essence, plaintiff alleges that there being no genuine issue of material fact, it is entitled to judgment as a matter of law. Defendants oppose the entry of judgment at this stage, alleging: 1) that the amount owed is substantially less than that indicated by plaintiff; and 2) that plaintiff's evidence in support of its motion for summary judgment is inadmissible hearsay (Docket Nos. 34, 46).

## I. Factual Background

On or about July 8, 1991, Quintero & Martínez, a corporation organized under the laws of Puerto Rico, entered into a loan agreement ("Loan Agreement") with Banco Nacional, N.A. whereby the Bank agreed to establish a $75,000 line of credit in favor of Quintero & Martínez. This Loan Agreement provided for payment of interest on the unpaid balance of the line of credit at a rate of 2 percentage points over the New York prime rate, determined daily (Plaintiff's Statement of Uncontested Facts, **Docket No. 28, Tab No. 3**). On that same day, Quintero, Martínez and Mrs. Martínez executed a document of continuing guaranty whereby said defendants agreed to guarantee, jointly, severally and unconditionally, all debts incurred by Quintero & Martínez pursuant to the Loan Agreement (Plaintiff's Statement of Uncontested Facts, **Docket No. 28, Tab No. 6**).

The Bank subsequently made some advances to Quintero & Martínez under the line of credit. According to Quintero, these advances were to be used originally for the purchase of some wood in Venezuela. As this transaction fell through, the monies were used for the cash flow of the business (*See* Plaintiff's Statement of Uncontested Facts, **Docket No. 28, Tab 4, Deposition of Quintero, p. 40**).

On or about January 24, 1992, upon a determination from the Comptroller of the Currency of the United States to the effect that the Bank was insolvent, the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of the assets of the Bank (Plaintiff's Statement of Uncontested Facts, **Docket No. 28, Tab No. 2**). Quintero & Martínez has admitted that after the closing of the Bank, no payments were made on the debt to the Bank (*see* Plaintiff's Statement of Uncontested Facts, **Docket No. 28, Tab 4, Deposition of Quintero, p. 43**).

Thereafter, the FDIC sold some of the Bank's assets to Remington, an Indiana corporation and plaintiff herein. Included among the newly acquired assets was the loan the Bank had made to Quintero & Martínez (Plaintiff's Statement of Uncontested Facts, **Docket No. 28, Tab No. 1, Unsworn Declaration Under Penalty of Perjury of Sean D. Klingle, Executive Vice President, Remington Investments**).

## II. Procedural Background

Remington filed the present action against Quintero & Martínez and the other above-named defendants to recover the funds owed on the loan (**Docket No. 1**).[1] After initial discovery of evidence between the parties, plaintiff moved for summary judgment (**Docket No. 26**). In support of its motion, Remington filed a memorandum of law as well as a statement of uncontested facts together with various documents, copies of deposition transcripts, and unsworn declarations made under penalty of perjury (**Docket No. 28**).[2]

Defendants, thereafter, filed their opposition to plaintiff's motion for summary judgment (**Docket No. 34**). Defendants argue, contrary to plaintiff's position, that there is a genuine issue of material fact as to the amount owed, which they claim is "substantially less" than that demanded by Remington (Defendant's Opposition to Remington's Motion for Summary Judgment, **Docket No.**

---

1. Plaintiff based jurisdiction on diversity of citizenship, 28 U.S.C. § 1332.

2. Shortly thereafter, and pursuant to the provisions of 28 U.S.C. § 636(c), the parties consented

to have this Magistrate–Judge conduct and preside over all pending proceedings in their case (**Docket No. 30**).

34, p. 4, paragraph 12) (hereinafter referred to as "Defendant's Opposition").

In their opposition, defendants also allege that the evidence presented by Remington in support of its motion for summary judgment, namely, a report from the FDIC containing the inventory of the Bank's assets, is not admissible under the Rules of Evidence as it constitutes hearsay (Defendant's Opposition, p. 5). Finally, defendants allege, in what seems to be a contradictory position, that there is no evidence of any advances made to them, since they are not noted in the back of the Master Promissory Note as required by the Note's terms and conditions (Defendant's Opposition, p. 7 and Exhibit VI).

Plaintiff then filed a reply to defendants' opposition (Reply of Remington in Support of Its Motion for Summary Judgment, **Docket No. 39**). In its motion, plaintiff essentially rebuffs each and everyone of defendants' arguments, and reasserts that defendants are not able to produce sufficient evidence that would raise a genuine issue of material fact that would preclude this Court from granting summary judgment in its favor. In addition, plaintiff argues that the FDIC report it produced in support of its motion is admissible as an exception to the hearsay rule, under Federal Rule of Evidence 803(8).

Defendants, in turn, filed a sur-reply to plaintiff's reply, reinstating the same two arguments raised in their opposition to Remington's motion for summary judgment. This time, however, defendants relied largely on deposition testimony by Mr. Ramón Vizcarrondo, former manager at the Bank, to the effect that he knew about the line of credit extended to Quintero & Martínez; that monetary advancements were made against such credit line; and that he was under the impression that some payments towards its debt were made by the defendants. However, Vizcarrondo did not recall the total number of payments made or the total amount paid and/or owed. He further stated that, although he "always thought" the amount

owed under the line of credit was around $50,000, he was not absolutely certain (**Docket No. 46**).[3]

Remington filed objections to the deposition of Mr. Vizcarrondo (Docket No. 47). In essence, it argues that the thoughts and mental impressions about what Mr. Vizcarrondo thought they owed is not admissible under Fed.R.Evid. 602, since according to plaintiff it is pure speculation.[4]

Remington then filed a "Motion Submitting Additional Affidavit in Support of Motion For Summary Judgment" (**Docket No. 48**), which included the unsworn declaration of Mr. Pedro A. Villodas Colón, former manager of the Electronic Data Processing Division of the Bank. Defendants' objections to the admission of Mr. Villodas' declaration as untimely (**Docket No. 50**) were overruled by this Court (**Docket No. 52**).

At a settlement conference held *in camera* on August 12, 1996, defendants were required to produce any available documents or evidence in their possession or control that did support their assertion that they had in fact made various payments to their creditor. Specifically, defendants were instructed to search and provide disclosure of its yearly financial statements for the fiscal years 1991–1995, wherein defendants' account payables and receivables could be identified. Both parties re-asserted not having any additional information regarding their respective claims (**Docket Nos. 56 and 57**).

On August 29, 1996, the parties reached an agreement for a settlement in this case (**Docket No. 59**). Under the stipulation filed with and approved by this Court, defendants agreed to pay plaintiff $60,000 in full settlement of plaintiff's claim. This amount was to be received by plaintiff no later than October 15, 1996. This agreement was subject to a condition: defendant's failure to comply would cause plaintiff's motion for summary judgment to be reinstated (Order of this Court, **Docket No. 61**).

---

**3.** The following is an excerpt of Vizcarrondo's testimony in this regard: "I just understood that by the time that the, [the Bank] collapsed, they owed $50,000. That is what I thought and I might be wrong, or I might be right. I do not

know." (**Docket No. 46**, Exhibit 1, Deposition of Vizcarrondo, p. 57)

**4.** Plaintiff's objections were noted by this Court (**Docket No. 52**).

On October 21, 1996, Remington notified this Court of defendant's failure to comply with the terms of the agreement, and requested that its motion for summary judgment be considered resubmitted (**Docket No. 62**). This Court granted plaintiff's request and is now prepared to rule on its motion.

## III. The Evidence

### A. Undisputed Facts

Defendants do not dispute the following facts: 1) Remington is a corporation organized under the laws of the state of Indiana; 2) Quintero & Martínez is a corporation organized under the laws of Puerto Rico; 3) Quintero, Martínez and Mrs. Martínez are all residents of Puerto Rico; 4) on January 24, 1992, the Bank was declared insolvent by the Comptroller of the Currency and the FDIC was appointed receiver of all of its assets; 5) the FDIC sold to Remington some of the Bank's assets, including the Quintero & Martínez loan.

The existence of the Loan Agreement is not in dispute either. Defendant's themselves have admitted to the existence of the Loan Agreement and the terms thereto (Defendant's Answer to the Complaint, **Docket No. 6**, paragraphs 11 and 12). In addition, through their written answers to plaintiff's interrogatories and their deposition testimony, defendants admitted having received advances from the Bank under the Loan Agreement (*see* Remington's Statement of Uncontested Facts, **Docket No. 28, Tab Nos. 4 and 5**).[5] Finally, defendants do not contend the existence of the continuing guaranty executed by Quintero, Martínez and Mrs. Martínez, in which they agreed to be held liable for all of Quintero & Martínez's indebtedness under the Loan Agreement.

### B. Evidence

### 1. By Plaintiff

In support of their position plaintiff has submitted substantial evidence, as follows:

a) unsworn declaration under penalty of perjury of Mr. Sean Klingle, Executive Vice–President of Remington, in which he states that Remington did in fact purchase the loan from the FDIC, with a balance due on that loan of $67,521.03, plus interest accrued, as of the date of the purchase;

b) copy of the Loan Agreement between the Bank and Quintero & Martínez;

c) a copy of a document titled "Continuing Guaranty" executed by the Bank and Quintero, Martínez and Mrs. Martínez, in which said defendants, jointly, severally and unconditionally agreed to guarantee all indebtedness of Quintero & Martínez to the Bank;

d) a copy of Quintero's deposition, in which he admits that Quintero & Martínez received advances from the Bank under the line of credit, although he did not remember the amount of the advances received or the payments made to the Bank against the line of credit;

e) a copy of defendant Quintero & Martínez's answers to plaintiff's interrogatories, in which it admitted that the Bank did indeed advance funds to Quintero & Martínez pursuant to the Loan Agreement;

f) a copy of a report prepared by the FDIC summarizing the Bank's assets (hereinafter referred to as the "FDIC report"), which indicates that according to Bank records, the balance of the principal due and owing on the Quintero & Martínez loan is $67,521.03;[6] and

---

**5.** In later motions filed with this Court, defendants attempt to raise an issue of fact by asserting that since there is no record of advances noted in the reverse of the Promissory Note, then there is no evidence that any advances were ever made. This is contrary to defendants' own admissions under penalty of perjury, and to statements made by Quintero and Martínez during their respective depositions. Since a party is precluded from arguing inconsistent positions re-

garding the same matter in the same suit, *FDIC v. Panelfab Puerto Rico, Inc.*, 739 F.2d 26, 30 (1st Cir.1984), this Court will disregard this part of defendants' argument.

**6.** As requested by plaintiff, and to protect the identity of other debtors whose names appear in that report, this document remains under seal. *See* **Docket No. 29**.

g) a copy of the unsworn declaration under penalty of perjury of Mr. William G. Bush, attorney-in-fact for the FDIC, who having examined the Bank's records, asserts that the FDIC report attached thereto is a true copy of page 809 of the inventory of assets prepared by the FDIC, based on information contained in the Bank's records, upon the FDIC's appointment as receiver of the Bank (*See* **Docket Nos. 28 & 29**).

Plaintiff also submitted the unsworn declaration under penalty of perjury of Mr. Pedro A. Villodas, former Manager of the Electronic Data Processing Division of the Bank. Attached to his declaration is a document which Mr. Villodas describes as a true copy of the "History Card" for the Quintero & Martínez loan. According to Mr. Villodas, this "History Card" is a report regularly prepared by the Division he managed, which showed the status and history of the loan, as well as all transactions on said loan, as recorded by his Division in the regular course of business at the Bank. In his declaration, Mr. Villodas explained that the History Card was prepared on January 28, 1992, and showed an outstanding balance on the Quintero & Martínez loan of $67,521.03 (**Docket No. 48**).[7]

### 2. By Defendants

In support of their position, defendants offer copies of Quintero's and Martínez's deposition, in which they state that, although they do not remember the exact amount they believe is owed, it is not the $67,521.03 Remington claims, because they had allegedly made some payments against the loan.

---

7. Defendant's objections to this additional evidence are based solely on its timeliness, not on its admissibility under the Rules of Evidence. Furthermore, since this document complies with the requirements of Federal Rule of Evidence 803(6), this Court now holds that the document in question is admissible as an exception to the hearsay rule.

8. At another point in his deposition, however, Quintero admitted that the amount claimed by Remington "could have been" the balance owed by Quintero & Martínez on the loan in question. *See* Remington's Statement of Uncontested Facts, **Docket No. 28**, Tab No. 4 (Deposition of Quintero, p. 16).

(Defendant's Opposition, p. 4, and Exhibits I and II).[8] Also submitted to that effect were unsworn statements under penalty of perjury from Quintero, Martínez, and Ramón Vizcarrondo, former Manager at the Bank (Defendant's Statement Of Contested Facts, **Docket No. 34**, Exhibits No. I, II and III).[9] Defendants have not submitted any documentary evidence in support of this allegation. Furthermore, at a settlement conference held on August 12, 1996, counsel for defendants admitted not being able to produce any further evidence in this regard, other than that already submitted (*See* **Docket No. 56**).

Defendants' sur-reply to plaintiff's motion for summary judgment relies largely on testimony provided by Mr. Vizcarrondo in his deposition, to support their contention that some payments were made against the line of credit prior to the closing of the Bank. Mr. Vizcarrondo added that he "always thought" the amount owed under the line of credit was around $50,000.[10] It is unquestionable, however, that the deponent does not recall the amount of the payments, and cannot produce any documentation to support his statement (**Docket No. 46**).

### IV. Analysis

#### A. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

---

9. Unsworn statements under penalty of perjury, prepared pursuant to 28 U.S.C. § 1746, can be used, in place of sworn statements or affidavits, to support or oppose a motion for summary judgment. *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit International, Inc.*, 982 F.2d 686, 689 (1st Cir.1993).

10. Significantly, Mr. Vizcarrondo also stated that "he cannot give faith that what I thought they owed is the real amount they owed." Defendant's Sur-reply, **Docket No. 46**, Exhibit I, p. 57.

matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

The moving party only has the burden of averring that there is an absence of evidence to support the non-moving party's position. *Mendes v. Medtronic,* 18 F.3d 13, 15 (1st Cir.1994). Once the moving party satisfies this requirement, the burden then shifts to the non-moving party to establish the existence of an issue of fact to affect the outcome of litigation and for which a reasonable trier of facts could find for the non-moving party. *Febus–Rodríguez v. Betancourt–Lebrón,* 14 F.3d 87, 91 (1st Cir.1994).

Although a motion for summary judgment should be denied if material facts are authentically in dispute, the non-movant has the burden of setting forth specific facts showing that there is a genuine issue for trial. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Mulero–Rodríguez v. Ponte, Inc.,* 98 F.3d 670, 673 (1st Cir.1996) (quoting *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990) and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). An issue is genuine if it "must be decided at trial because the evidence, viewed in the light most flattering to the non-movant, would permit a rational fact finder to resolve the issue in favor of either party." *Id.*

Summary judgment is appropriate "if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Fennell v. First Step Designs, Ltd.,* 83 F.3d 526, 535 (1st Cir.1996) (quoting *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 259 (1st Cir.1994)); *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.,* 76 F.3d 1245 (1st Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 81, 136 L.Ed.2d 39 (1996). *See also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts").

Moreover, Rule 56(c) "mandates the entry of summary judgment, ... upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Fennell v. First Step Designs, Ltd.,* 83 F.3d at 535 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

■ In the case at bar, plaintiff has provided extensive and substantial evidence to show there is no genuine issue of material fact. Plaintiff has undisputedly shown: 1) the existence of the loan, which defendants themselves admitted to; and 2) the existence of a balance due and owing on that loan. Furthermore, plaintiff has provided evidence that shows that balance due to be $67,521.03, the amount claimed. In essence, therefore, plaintiff has met its initial burden.

The defendants in this case have failed to provide sufficient evidence that would raise a genuine issue of material fact. The unsworn declarations under penalty of perjury, where the declarants merely allege in unclear terms to have made some payments against the loan, and that in consequence the amount owed is "substantially less," without any documentary evidence whatsoever to support their position, is not sufficient to rebuff the business records of the Bank, showing the amount due. Defendants have not produced business records, canceled checks, banking or financial statements, or other documentation that would be kept in the regular course of their business to sufficiently raise a genuine issue of fact (**Docket Nos. 56 and 57**). Their unsupported allegations merely serve to raise the sort of "metaphysical doubt" the Supreme Court has held not to be enough to block summary judgment. *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. at 586, 106 S.Ct. at 1355–56.

Furthermore, defendants themselves have unequivocally admitted they are unable to produce further evidence in their favor; in other words, there is not even hope that defendants can produce any additional evidence at trial, thus making it unnecessary to proceed thereto (**Docket Nos. 56 and 57**). *See J. Geils Band Employee Benefit Plan v.*

*Smith Barney Shearson,* 76 F.3d at 1251 ("brash conjecture coupled with earnest hope that something concrete will materialize" is insufficient to block summary judgment); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure,* § 2727, p. 159–163 (2d ed.1983) (hereinafter referred to as "Wright, Miller & Kane"). In this case, therefore, entry of summary judgment for plaintiff is appropriate: defendant's alleged issue of material fact is not genuine, as it is based on mere unsupported allegations. The evidence on record, even when considered in the light most favorable to defendants, would not move this Court to resolve in their favor. *See Mulero–Rodríguez v. Ponte, Inc.,* 98 F.3d 670, 673 (1st Cir.1996).

## B. Admissibility of the FDIC report

■ The above, however, does not entirely dispose of plaintiff's motion for summary judgment. In support of a motion for summary judgment, the moving party may submit any material it chooses, within the parameters of Rule 56, as long as it is admissible or usable at trial. 10A Wright, Miller & Kane, *supra* § 2721, p. 40. Defendants argue that the FDIC report submitted by plaintiff in support of their motion for summary judgment is not admissible at trial, since it constitutes inadmissible hearsay. Plaintiff, in turn, argues for the report's admissibility as it qualifies as an exception to the hearsay rule under Federal Rule of Evidence 803(8).

Generally, evidence that constitutes hearsay is not admissible at trial. Fed.R.Evid. 802. The Rules, however, provide for various exceptions to that general norm. One of these exceptions is codified in Federal Rule of Evidence 803(8), which states as follows:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(8) **Public Records and Reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to re-

port ..., or (C) in civil actions and proceedings ..., factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Defendants argue that the FDIC report submitted by plaintiffs does not meet the requirements of the rule because, they allege, it was not "prepared as a result of factual findings resulting from an investigation made pursuant to authority granted by law." Defendants' Opposition, **Docket No. 34,** p. 6. In their sur-reply, defendants further argued that the FDIC report is not admissible since, according to them, it is not based on direct or circumstantial evidence but on inadmissible hearsay (i.e., the Bank records). They also contend the report is inadmissible because, contrary to the requirements of Rule 803(8), it is not based on matters of which the preparer had first-hand knowledge. Finally, defendants argue that the report should not be admitted because Remington has failed to provide evidence to establish the skills and/or preparation of the official who prepared the report (Defendants' Sur–Reply, **Docket No. 46,** p. 5).

The Court is not convinced by defendants' arguments. Contrary to defendant's contentions, the report fully complies with the requirements of Fed.R.Evid. 803(8)(B). First, the report is a data compilation, as required by the first part of the Rule. Second, it is a compilation of data from "matters observed," namely, the business records of the Bank as kept in its regular course of business. Third, this report was prepared by the FDIC "pursuant to duty imposed by law as to which matters there was a duty to report." The FDIC, as appointed receiver of the Bank, had the statutory duty to prepare the data compilation in question. *See* 12 U.S.C. §§ 191 and 1821(c)-(d). Clearly, then, this report would squarely fall within the confines of Rule 803(8)(B).

■ But even if the FDIC report were not to be admissible under that Rule, it would certainly be admissible under Rule

803(8)(C).[11] In this regard, defendant's contention that the rule requires the official preparing the report to have first hand or personal knowledge of the matters contained therein is incorrect. This interpretation by defendant is certainly narrower than that permitted by the Supreme Court in *Beech Aircraft Corporation v. Rainey,* 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988), which adopted a much broader interpretation of the rule in concluding that even opinions or conclusions derived from data contained in a report are admissible under this rule. Moreover, the Court of Appeals for the First Circuit has flatly rejected the argument that official firsthand knowledge is required. In *Robbins v. Whelan,* 653 F.2d 47 (1st Cir.), *cert. denied,* 454 U.S. 1123, 102 S.Ct. 972, 71 L.Ed.2d 110 (1981), the Court of Appeals held that a report prepared by the Department of Transportation, which in fact constituted a compilation of data provided by car manufacturers, was admissible under Rule 803(8)(C). In so holding, the Court of Appeals rejected defendant's argument that the report in question was prepared by officials who neither produced the figures contained therein nor verified its accuracy. *See Id.* at 52.[12] The Court reasoned that the agency need not have firsthand knowledge of all the matters contained in the report, so long as it has "first hand knowledge of the investigation by which it accumulates the published factual findings." *Id.; see also, United States v. Davis,* 826 F.Supp. 617, 622 n. 19 (D.R.I.1993). In the case at bar, this requirement is more than met: it was the FDIC itself that conducted the investigation on which the report is based.

In the *Whelan* case, the Court's focus in determining a government report's admissibility was on its reliability and, therefore, its trustworthiness. After considering various factors in favor of its reliability, it held that the report was sufficiently reliable and trustworthy to allow the report to be admitted "without further verification efforts by the agency [preparing the report]." *Id.*[13] In the case before this Court, the defendants allege that the FDIC report should not be admitted because there is no evidence of its trustworthiness. This plain allegation, without more, is insufficient to render the report inadmissible. Courts have held that reports prepared by governmental entities carry with them a presumption of admissibility in the first instance. *Moss v. Ole South Real Estate, Inc.,* 933 F.2d 1300, 1305 (5th Cir.1991); *Ellis v. International Playtex, Inc.,* 745 F.2d 292, 300 (4th Cir.1984) (admissibility is assumed "because of the reliability of the public agencies usually conducting the investigation"); *Livingston v. Isuzu Motors, Ltd.,* 910 F.Supp. 1473, 1497 (D.Mont.1995); *United States v. Davis,* 826 F.Supp. 617 (D.R.I.1993). In light of this presumption of admissibility, it is the party opposing the admission of a governmental report who carries the burden of showing its untrustworthiness. *Moss v. Ole South Real Estate, Inc.,* 933 F.2d at 1305; *Ellis v. International Playtex, Inc.,* 745 F.2d at 302. Defendants here have not presented this Court with any evidence whatsoever to refute the trustworthiness of the FDIC report offered by plaintiff, and therefore has not met its evidentiary burden.

One final issue remains regarding the FDIC report in question. Defendants

---

**11.** Initially, it must be noted that the FDIC report complies with the statutory requirements of the evidentiary rule: it contains "factual findings" (i.e the contents of the Bank records) "resulting from an investigation" (i.e the FDIC's examination of those records) "made pursuant to authority granted by law" (i.e. the appointment of the FDIC as receiver of the Bank, and 12 U.S.C. § 1821(c)-(d)). *See* Fed.R.Evid. 803(8)(C). Nonetheless, defendants' challenges to the admissibility of this report will be addressed individually.

**12.** This holding is consistent with the opinion of various legal writers. For example, Professor Michael M. Graham has stated as follows:

"The statement in *United States v. Central Gulf Lines, Inc.,* 974 F.2d 621, 626 (5th Cir.1992) ... that Rule 803(8)(C) requires in part that 'the person making the report must have observed the matters contained in the report firsthand' is **obviously incorrect** and should not be followed."

2 Graham, *Handbook of Federal Evidence* § 803.8, p. 507–508, n. 30 (4th ed.1996) (emphasis added).

**13.** Again, Professor Graham is in agreement with this principle. *See* note 11, *supra.*

allege that the report should not be admitted into evidence since it is based on hearsay, i.e. the Bank records. This argument is without merit: as we have already determined, the FDIC may rely on information provided by sources other than the agency itself to prepare official reports, and that fact in itself does not make the report inadmissible, as long as it is reliable. *See Robbins v. Whelan,* 653 F.2d 47 (1st Cir.1981); Graham, *supra* note 12. In any event, the records of the Bank used in preparing this report were those kept by the Bank in the regular course of its business operations, and as such are admissible as an exception to the hearsay rule. Fed.R.Evid. 803(6). Since both the FDIC report and the Bank records are excepted from the hearsay rule, the report is admissible. Fed.R.Evid. 805; Graham, *supra* note 12, at 489.

### V. Conclusion

Defendants in this case have failed to provide this Court with any reason for not entering summary judgment against them. Their allegations that the amount owed is "substantially less" than that claimed by plaintiff, without any other evidence in their favor, is insufficient to defeat the substantial evidence presented by Remington against defendants. This Court would like to make clear that this is a case of sufficiency of evidence; we pass no judgment as to the credibility of defendants' statements. But even viewing the evidence in the light most favorable to defendants, this Court cannot reasonably find in their favor.

Accordingly, Remington's Motion for Summary Judgment (**Docket No. 28**) is hereby GRANTED. All other related motions filed under **Docket Nos. 28, 34, 39, 46, 48 and 62** are **NOTED**. Judgment will be entered against defendants, jointly and severally, for the amount of $67,521.03, plus interest accrued at the rate stipulated in the Loan Agreement until the date of entry of judgment. Costs shall be awarded to plaintiff. The parties shall submit, within fourteen (14) days from the entry of judgment, their respective positions regarding plaintiff's request that attorney's fees, and post-judgment

interest be awarded pursuant to 28 U.S.C. § 1961.

**IT IS SO ORDERED.**